FILED
United States Court of Appeals
Tenth Circuit

February 1, 2013

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

AUSTIN ALAN RAY,

      Defendant - Appellant.

No. 11-3383
(D.C. No. 6:11-CR-10029-EFM-1)

_____

**ORDER**
_____

Before **LUCERO**, **MURPHY**, and **HARTZ**, Circuit Judges.
_____

This matter is before the court on appellant's petition for rehearing en banc. We also have a response from the United States. Upon review, the panel assigned to hear this matter originally grants panel rehearing, in part, in order to amend Section II A of the original decision. The implicit request for panel rehearing contained in appellant's en banc application is otherwise denied. A copy of the amended opinion is attached and shall be incorporated in this order. The clerk is directed to issue the amended decision effective today's date.

The panel's revised opinion was circulated to all the active judges on the court, as were the request for en banc rehearing and the response. No judge called for a poll. Accordingly, the petition for en banc consideration is denied.

Entered for the Court

ELISABETH A. SHUMAKER, Clerk

2

FILED
United States Court of Appeals
Tenth Circuit

February 1, 2013

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

AUSTIN ALAN RAY,

Defendant - Appellant.

No. 11-3383

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. NO. 6:11-CR-10029-EFM-1)

---

Timothy J. Henry, Assistant Federal Public Defender, Federal Public Defender Office, Wichita, Kansas, for Defendant - Appellant.

James A. Brown, Assistant United States Attorney, (Barry R. Grissom, United States Attorney, with him on the brief), District of Kansas, Topeka, Kansas, for Plaintiff - Appellee.

---

Before **LUCERO**, **MURPHY**, and **HARTZ**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

After Defendant Austin Alan Ray was arrested for downloading child pornography using peer-to-peer file-sharing software, he pleaded guilty in federal district court to receiving material involving the sexual exploitation of a minor.

This appeal presents the question whether the district court could properly apply a two-level sentencing enhancement for the distribution of child pornography under USSG § 2G2.2(b)(3)(F) when the record indicated only that Defendant used the peer-to-peer file-sharing software and that its sharing function was enabled, but not that Defendant actually knew his software was capable of sharing files. We hold that the guideline was properly applied. We also reject Defendant's claims that the district court unconstitutionally made findings for sentencing enhancements under a preponderance-of-the-evidence standard, that the court erred procedurally at sentencing, and that the sentence was substantively unreasonable. Accordingly, we affirm Defendant's sentence.

## I.  BACKGROUND

In November 2010, acting on a tip from federal authorities in Michigan, special agents from United States Immigration and Customs Enforcement (ICE) executed a search warrant at the home of Defendant and his parents in Kingman, Kansas. The source of the tip, Gerald Benedict, had told authorities that email correspondence from Defendant indicated that he might be molesting a child. Benedict's tip also led authorities to believe that Defendant may have been sending Benedict child pornography.

When the ICE agents arrived at Defendant's house, accompanied by local police, they found Defendant and his mother there. They also found two computers. One was a desktop computer in the dining room. Defendant admitted

to being the owner. When asked whether any child pornography was stored on it, Defendant responded, "[I]t's all gone," and explained that he had deleted all the child pornography because the images were "sick." R., Vol. 2 at 120 (internal quotation marks omitted). He said that for about a year he had used a peer-to-peer file-sharing program called Shareaza to search for and download child pornography using terms such as "boy" and "kid sex."[1] *Id.* (internal quotation marks omitted). Defendant admitted that he was familiar with how to use computers and the Internet but said he was not a "'computer genius.'" *Id.* He acknowledged knowing that it is illegal to download and view child pornography.

The second computer, a laptop in the room of Defendant's brother, was registered in the brother's name, but Defendant admitted that he had borrowed it for use earlier in the year. Defendant's brother, who had arrived home in the middle of the search, corroborated Defendant's statement.

The government's forensic investigation of the desktop computer uncovered some 2,430 images of children younger than 12 engaged in a variety of sexual acts. The forensic investigator determined from the computer's registry that the images had last been accessed on October 30, 2010, only four days before the ICE

---

[1]In an unpublished opinion involving a file-sharing program called Limewire, we explained that the program "allows users to search for, download, and share various types of files, including videos and pictures, over the Internet with other Limewire users." *United States v. Espinoza*, 403 F. App'x 315, 316 (10th Cir. 2010) (unpublished). The record in this case suggests that Shareaza operates similarly.

search.  The "share" setting of the Shareaza file-sharing program on the computer was activated.  The laptop was found to contain 34 images and one movie file of child pornography similar to the files found on the desktop; the dates of creation for these items matched the time frame in which Defendant had admittedly borrowed the laptop.

Further investigation cleared Defendant of some of the wrongdoing suggested by Benedict, the instigator of the investigation.  First, although Defendant had indeed sent Benedict several emails detailing his purported commission of sex acts with a particular child, Defendant said that these interactions had been purely imaginary; and an interview of the child confirmed that statement.  Second, officers determined that Defendant had not emailed child pornography to Benedict.

In August 2011 Defendant pleaded guilty in the United States District Court for the District of Kansas to the knowing, intentional, and unlawful receipt of child pornography.  *See* 18 U.S.C. § 2252(a)(2).  Although the indictment charged the distribution of child pornography as well as its receipt, Defendant pleaded to receipt only.

In its presentence investigation report (PSR), the probation office concluded that the Sentencing Guidelines assigned Defendant (1) a base offense level of 22, *see* USSG § 2G2.2(a)(2) (2011); (2) a two-level enhancement because the material on Defendant's computer involved prepubescent minors, *see id.*

§ 2G2.2(b)(2); (3) a four-level enhancement because the material portrayed sadistic or masochistic conduct or other depictions of violence, *see id.* § 2G2.2(b)(4); (4) a two-level enhancement for Defendant's use of a computer, *see id.* § 2G2.2(b)(6); (5) a five-level enhancement because Defendant had received more than 600 images, *see id.* § 2G2.2(b)(7)(D); and, most important for this appeal, (6) a two-level enhancement because Defendant's offense involved the distribution of child pornography, *see id.* § 2G2.2(b)(3)(F). The PSR also recommended a three-level downward adjustment under § 3E1.1 for Defendant's acceptance of responsibility and his timely guilty plea, yielding a total offense level of 34. Given Defendant's criminal-history category of I, the Guidelines sentencing range was 151 to 188 months' imprisonment.

In a written response to the PSR, Defendant objected to the two-level enhancement for distribution under § 2G2.2(b)(3)(F) on the ground that the government had offered no evidence that Defendant had distributed any child pornography or that any of the files downloaded through Shareaza had later been shared with another computer. Defendant further argued that even if such sharing had occurred, such sharing had been unintentional. Instead of the PSR's recommended imposition of a two-level distribution *enhancement*, Defendant urged a two-level *reduction* under § 2G2.2(b)(1) because his conduct "was limited to the receipt or solicitation" of child pornography and involved no intent to distribute. USSG § 2G2.2(b)(1).

At sentencing, Defendant renewed this objection. The government conceded that it could make no direct showing that the files on Defendant's computer had been shared with other computers, and it appeared to concede that it could not prove that the activation of the "share" function on Defendant's version of Shareaza was the product of his volition rather than simply a default setting. Nevertheless, the government urged that the use of a peer-to-peer file-sharing program constitutes "generic distribution" that triggers the two-level § 2G2.2(b)(3)(F) enhancement as a matter of law. R., Vol. 3 at 59. Defense counsel did not dispute that Defendant had used a peer-to-peer file-sharing network to receive illegal files; rather, he argued that to establish distribution, the government bore the burden of introducing concrete evidence that Defendant's computer had shared such files with at least one other computer.

The district court overruled Defendant's objection on this and several other points. It explained:

> I'm going to find . . . the only factual issue dispute that's actually raised here is the issue of distribution. And the defendant does not challenge—and, in fact, he used the . . . file-sharing programs. I'm, of course, familiar with this area of law, and I think that use of those programs is legally enough to support the guideline enhancement for distribution that's found here. I don't think more is required. I don't think the law requires more.
>
> So, again, that's a legal conclusion. I think that's the status of the law in this circuit. I don't find that there are any other factual challenges that the Government needs to put evidence on, given that legal conclusion.

*Id.* at 72. The court thus accepted as correct the PSR's calculation of an offense level of 34 and a criminal-history category of I, which produced a Guidelines sentencing range of 151 to 188 months' imprisonment.

After hearing the government's request for a sentence within the Guidelines range and defense counsel's request for the statutory minimum of five years, the district court imposed a below-Guidelines sentence of 102 months' imprisonment followed by a seven-year term of supervised release. In explaining its decision, the court said that it balanced a number of considerations: the brutality and quantity of the images in Defendant's possession, the need for deference to Congress's penal determinations, the Kingman community's expressions of support for Defendant, and Defendant's personal characteristics, including his youth and his professed desire for rehabilitation.

Defendant's briefs on appeal argue that the district court committed the following errors in sentencing him: (1) it inappropriately applied the two-level enhancement for distribution under § 2G2.2(b)(3)(F) and should have applied the two-level reduction under § 2G2.2(b)(1) for mere receipt or solicitation; (2) it violated his Fifth and Sixth Amendment rights to due process and a jury trial by enhancing his Guidelines sentence based on judicial findings made by a preponderance of the evidence; (3) it flouted the commands of 18 U.S.C. § 3553 by (a) giving more than the permissible level of deference to the Guidelines, (b) refusing to consider Defendant's history as a victim of sexual abuse, and (c)

erroneously finding that Defendant had deleted his child pornography files only in anticipation of imminent discovery by authorities; and (4) the court's sentence was substantively unreasonable.  In addition, at oral argument Defendant relied on our post-briefing opinion in *United States v. Ramos*, No. 11-3126, 2012 WL 3642432 (10th Cir. Aug. 27, 2012), to argue that the distribution enhancement required evidence of his *knowledge* of the file-sharing program's capacity to upload files to other computers.  We address Defendant's arguments in turn.

## II.   DISCUSSION

### A.     The Guidelines Enhancement for Distribution

We review de novo the district court's interpretation of the Guidelines.  *See United States v. Torres–Ruiz*, 387 F.3d 1179, 1180–81 (10th Cir. 2004).  The enhancement at issue here applies if the receipt of material involving sexual exploitation of a minor "involved . . . [d]istribution."  USSG § 2G2.2(b)(3)(F).  *Distribution* in this context is defined in the commentary to § 2G2.2, which states:

> *"Distribution" means any act*, including possession with intent to distribute, production, transmission, advertisement, and transportation, *related to the transfer of material* involving the sexual exploitation of a minor. Accordingly, distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing but does not include the mere solicitation of such material by a defendant.

*Id.* § 2G2.2 cmt. n.1 (emphasis added).

Our recent opinion in *United States v. Ramos,* 2012 WL 3642432, disposed of the principal argument in Defendant's briefs, holding that § 2G2.2(b)(3)(F)

does not require the government to prove that child pornography was actually transferred or that the defendant had an *intent* to distribute the pornography. *See id.* at *5. But *Ramos* had no need to decide whether knowledge was a necessary element of the enhancement, because evidence in that case showed that the defendant had sophisticated knowledge of how his file-sharing program provided access to other users. *See id.* at *6. We held only that "when an individual uses a peer-to-peer network file-sharing program with knowledge that the program will deposit downloaded child-pornography files into a shared folder accessible to other users—e.g., rendering files only a mouse-click away—then that person has engaged in an act related to the transfer of child pornography," so the enhancement can be properly applied. *Id.* at *5. Our footnote to the quoted language said, "Whether the government could ever establish distribution under USSG § 2G2.2(b), where a defendant used a peer-to-peer file-sharing program but possessed some lesser degree of knowledge is not a question we need consider here." *Id.* at n.3.

We now hold that § 2G2.2(b)(3)(F) does not require that a defendant know about the distribution capability of the program he is using to view child pornography. On its face, the text of § 2G2.2(b)(3)(F) requires no particular state of mind, nor does the Sentencing Commission's commentary. The former refers only to "[d]istribution." USSG § 2G2.2(b)(3)(F). And the latter refers only to "an act . . . related to the transfer of material involving the sexual exploitation of

a minor." *Id.* cmt. n.1.[2]  To be sure, a longstanding precept of criminal law is that, except in the case of "public welfare" or "regulatory" offenses, criminal statutory provisions should not be read to impose strict liability and should instead be construed as carrying a *mens rea* element when they are silent.  *See Staples v. United States*, 511 U.S. 600, 605–06 (1994) (internal quotation marks omitted).  The Supreme Court has explained that observance of this principle helps avoid "criminaliz[ing] a broad range of apparently innocent conduct."  *Id.* at 610 (internal quotation marks omitted).

A sentencing enhancement, however, is treated differently than a criminal statute in a number of fundamental respects.  *See United States v. Nava-Sotelo*, 354 F.3d 1202, 1206 n.9 (10th Cir. 2003) ("For instance, unless they increase the penalty for a crime beyond the prescribed statutory maximum, sentencing factors, unlike elements of an offense, need not be alleged in the indictment, submitted to the jury or proven beyond a reasonable doubt.").  We have repeatedly held that when the plain language of a guideline, in contrast to a criminal statute, does not include a *mens rea* element, we should not interpret the guideline as containing such an element.  *See United States v. Saavedra*, 523 F.3d 1287, 1289 (10th Cir. 2008) ("[W]here a statutory sentencing provision rather than an element of the

_____

[2] We recognize that the Commentary includes "possession with *intent* to distribute" as an example of distribution.  USSG § 2G2.2 cmt. n.1 (emphasis added).  But no such *mens rea* is attached to any other example, such as "posting material . . . on a website for public viewing."  *Id.*

-10-

conviction is at issue, we have declined to impose a scienter requirement if the text does not expressly include one."); *Nava-Sotelo*, 354 F.3d at 1207 ("Not only is the distinction between elements and sentencing factors clear, but the rationale for implying a mens rea element in criminal statutes is absent when addressing sentencing factors.").  The common-law principles articulated in *Staples* do not apply because the Guidelines "may compound the punishment for the offense, but fall far short of criminalizing apparently innocent conduct."  *Saavedra*, 523 F.3d at 1289 (brackets and internal quotation marks omitted).  Thus, for example, we held in *Saavedra* that the district court properly assigned the defendant the base offense level prescribed for carrying a shotgun with a barrel shorter than 18 inches, even though the government had introduced no evidence that the defendant knew that the barrel was that short.  *See id.* at 1289–90.  Other circuits agree.  *See United States v. Serfass*, 684 F.3d 548, 550–52 (5th Cir. 2012) (no requirement of knowledge that the methamphetamine had been imported); *United States v. Thomas*, 628 F.3d 64, 68–70 (2d Cir. 2010) (no requirement that the defendant knew or had reason to believe that gun was stolen); *United States v. McClain*, 252 F.3d 1279, 1286 (11th Cir. 2001) (no requirement of knowledge that person used in the offense was under 18); *United States v. Lavender*, 224 F.3d 939, 941 (9th Cir. 2000) (no requirement that defendant intended to use as a weapon the object being carried).

Our general rule for interpreting the Guidelines is reinforced in this case because the same commentary that defines *distribution* without requiring scienter defines *distribution to a minor* as "the *knowing* distribution to an individual who is a minor at the time of the offense." USSG § 2G2.2 cmt. n.1 (emphasis added). Truly, the drafters of the commentary to § 2G2.2 knew how to include a scienter requirement when they wanted to.

Thus, we hold that the district court correctly applied § 2G2.2(b)(3)(F) despite the absence of evidence that Defendant knew that the file-sharing program he was using made his child-pornography files available to others on the Internet.

We further hold that the district court did not err in rejecting Defendant's request to apply the two-level reduction of § 2G2.2(b)(1). That reduction applies to a defendant who, like Defendant, has a base offense level of 22 under § 2G2.2(a)(2) if "the defendant's conduct was limited to the receipt or solicitation of material involving the sexual exploitation of a minor . . . *and* . . . the defendant did not intend to traffic in, or distribute, such material." *Id.* § 2G2.2(b)(1) (emphasis added). The requirements of this provision are conjunctive. Defendant's contention that he never had any intent to distribute, even if accurate, is therefore not controlling. The district court's finding that Defendant had engaged in distribution—a finding we uphold—foreclosed any finding that Defendant's conduct was limited to receipt or solicitation. Hence, Defendant was ineligible for the two-level reduction under § 2G2.2(b)(1).

Defendant argues that our analysis is contrary to the expressed

understanding of the United States Sentencing Commission, which promulgates

the Guidelines. He points to the Commission's explanation for Amendment 664

to the Guidelines, which added the two-level reduction in § 2G2.2(b)(1) in 2004.

The Commission's Reason for Amendment (RFA) states:

> The amendment also provides a two-level decrease at §2G2.2(b)(1)
> for a defendant whose base offense level is level 22, whose conduct
> was limited to the receipt or solicitation of material involving the
> sexual exploitation of a minor, and whose conduct did not involve an
> intent to traffic in or distribute the material. *Thus, individuals
> convicted of receipt of child pornography with no intent to traffic or
> distribute the material essentially will have an adjusted offense level
> of level 20, as opposed to an offense level of level 22, for receipt with
> intent to traffic, prior to application of any other specific offense
> characteristics.* The Commission's review of these cases indicated
> the conduct involved in such "simple receipt" cases in most instances
> was indistinguishable from "simple possession" cases. The statutory
> penalties for "simple receipt" cases, however, are the same as the
> statutory penalties for trafficking cases. Reconciling these
> competing concerns, *the Commission determined that a two-level
> reduction from the base offense level of level 22 is warranted, if the
> defendant establishes that there was no intent to distribute the
> material.*

U.S. Sentencing Guidelines Manual app. C, vol. III amend. 664, at 59 (Nov. 1,

2011) (Amendment 664) (emphasis added).

We are not persuaded. The opening sentence of the RFA paragraph repeats

the content of § 2G2.2(b)(1) when it states that the two-level decrease is available

only to a defendant "whose *conduct* was limited to the receipt or solicitation of

[child pornography], *and* whose conduct did not involve an intent to traffic in or

distribute the material." Amendment 664 at 59 (emphasis added). Amendment 664 did not change the definition of *distribution*, which, as explained above, does not require an intent to distribute; so if the defendant engaged in unintentional distribution, his conduct was *not* limited to receipt or solicitation. Indeed, if the two-level decrease applied to unintentional distribution, then the first requirement for the decrease—that the defendant's conduct be "limited to the receipt or solicitation of [child pornography]," *id.*—would be superfluous, because even if the conduct included distribution, the absence of intent to distribute would make the defendant eligible for the two-level decrease. To be sure, the RFA paragraph goes on to partially contradict the opening sentence, saying, in the sentence emphasized by Defendant, that the two-level reduction is to be granted to those "convicted of receipt of child pornography with no intent to traffic or distribute the material." Amendment 664 at 59. But that language cannot be taken as a precise formulation of the Guideline. It is true in general, but not when the defendant has actually distributed child pornography (albeit unintentionally). Perhaps it would have been better if the RFA had included all the necessary qualifications to each of its sentences. But such detail can detract from the purpose of stating the general rule without too much clutter. We read the RFA sentence relied on by Defendant as being merely an instance of the inexactness of expression of thought commonly (if not inevitably) found in summary explanations of technical language. In short, we will not reject the operative

language of the Guidelines just because of some language in the RFA that is itself inconsistent with other language in the same paragraph.

### B. Fifth and Sixth Amendment Rights

Defendant's second claim on appeal is that the district court violated his Fifth Amendment right to due process of law and his Sixth Amendment right to a jury trial when it imposed the distribution enhancement based on a preponderance of the evidence. He relies primarily on the line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), which held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." The Supreme Court, however, has definitively held that *Apprendi* does not apply to the present advisory-Guidelines regime. *See United States v. Booker*, 543 U.S. 220, 259 (2005) ("[W]ithout this provision [of the Guidelines statute]—namely, the provision that makes the relevant sentencing rules mandatory and imposes binding requirements on all sentencing judges—the statute falls outside the scope of *Apprendi*'s requirement." (ellipsis, brackets, and internal quotation marks omitted)). Although we have left open the possibility that due process may require proof by clear and convincing evidence before imposition of a Guidelines enhancement that increases a sentence by an "extraordinary or dramatic" amount, *United States v. Olsen*, 519 F.3d 1096, 1105 (10th Cir. 2008), there was no such increase here. If the district court had agreed

-15-

with Defendant's position on appeal regarding his offense level, his Guidelines sentencing range would have been 97–121 months; but with the enhancements his range was not dramatically higher (151–188 months), and the sentence imposed (102 months) was within the unenhanced range.

## C. Procedural Claims in Connection with § 3553(a) Factors

Defendant argues that his sentencing was procedurally unreasonable on three grounds: (1) the district court mistakenly treated the Guidelines as mandatory rather than advisory; (2) the court incorrectly refused to consider evidence that he had been sexually abused as a young child; and (3) the court refused to credit him with deleting the child pornography from his computer, because it made the clearly erroneous finding that he had deleted the material only for fear of apprehension and not because of genuine remorse or renunciation. We review these claims for abuse of discretion. *See United States v. Smart*, 518 F.3d 800, 805 (10th Cir. 2008). Abuse-of-discretion review ordinarily includes review of any legal conclusions de novo and any factual findings for clear error. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990); *United States v. Munoz-Nava*, 524 F.3d 1137, 1146 (10th Cir. 2008).

### i. Advisory Nature of Sentencing Guidelines

Defendant points to several remarks by the district court during sentencing that, he claims, reveal the court's inappropriate deference to the Guidelines and its mistaken impression that the Guidelines are mandatory rather than advisory in

nature. He argues that this deference caused it to depart from its duty to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of punishment enumerated in 18 U.S.C. § 3553(a)(2). 18 U.S.C. § 3553(a); *see also United States v. Martinez–Barragan*, 545 F.3d 894, 904 (10th Cir. 2008) (describing this provision as communicating a "parsimony principle" (internal quotation marks omitted)).

We are not persuaded. The court said only that it is "required to consider [the Guidelines]" and would "give them great weight and deference." R., Vol. 3 at 107. Deference to the Guidelines is not improper. To the contrary, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007) (citation omitted). Indeed, without deference the Guidelines would be impotent, and we would likely soon return to the sentencing disparities that caused Congress to enact a guidelines regime. Of course, deference can go too far; a slavish conformity to the Guidelines is improper. But such slavishness was certainly not present here. The court varied from the Guidelines to impose a sentence well below the Guidelines sentencing range.

Nor did the district court's statements conflict with the parsimony principle of § 3553(a). Expressing deference to the Guidelines is perfectly consistent with

§ 3553(a)'s command to impose a "sentence sufficient, but not greater than necessary," to carry out the purposes of § 3553(a)(2).  As the Supreme Court has observed, "[T]he sentencing statutes envision both the sentencing judge and the [Sentencing] Commission as carrying out the same basic § 3553(a) objectives, the one, at retail, the other at wholesale."  *Rita v. United States*, 551 U.S. 338, 348 (2007).  Nothing in the district court's words suggests a failure to perform its retail consideration of the § 3553(a) factors as applied to Defendant.

### ii.    Defendant's History of Sexual Abuse

Defendant next contends that the district court erred by refusing to consider his history of suffering sexual abuse as a young child.  He points to the following excerpt from the court's discussion at sentencing:

> I have great sympathy for [Defendant] and others like him who are victims of prior abuse themselves, just as I have great sympathy for defendants who appear before me who are raised sometimes in the most disadvantageous situations.  I frequently have criminal defendants in this courtroom who were raised without knowing their parents or their parents were in jail, they lived on the streets, they did not have educational, nutritional advantages that many people do.  Those are sympathetic situations, *but the law does not really allow that to be an excuse for criminal conduct*.  And while sympathetic to that, *I can't use that as a basis to reduce his sentence either*.

R., Vol. 3 at 111 (emphases added).  According to Defendant, the court's refusal to consider the childhood abuse violated 18 U.S.C. § 3553(a)(1), which requires the sentencing court to consider "the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).  We disagree.

The district court's words must be read in context. The court's overall treatment of the § 3553(a) factors convinces us that no error occurred. After citing the need to "look at . . . the characteristics of the defendant," the court credited Defendant's youth, his community support, his efforts toward personal rehabilitation, and his statement to the court as grounds for leniency. R., Vol. 3 at 114. Just as in the past we have said that "the district court is presumed to recognize its discretion [to depart downward], unless it unambiguously states it lacks discretion to grant the departure," *United States v. Fonseca*, 473 F.3d 1109, 1112 (10th Cir. 2007), we presume that the district courts know that under the present advisory-Guidelines regime, they may consider almost any factor not antithetical to our system of justice (such as race or religion). It is not unusual for a court to say that it "cannot" grant a party's request when it is unpersuaded by the party's argument to exercise discretion in the party's favor. In light of the district court's consideration of various personal information concerning Defendant in reducing his sentence, we believe that if it thought that some specific law, rather than the court's own views of appropriate sentencing policies, precluded consideration of childhood abuse, it would have said so.[3]

---

[3] We note that although the government does not ask us to review this issue for plain error, Defendant did not object at sentencing that the court had improperly limited its discretion. *See United States v. Gantt*, 679 F.3d 1240, 1246–47 (10th Cir. 2012) (issue not raised in district court is reviewed only for plain error). Had he done so, the court could have clarified its statement, presenting an unambiguous issue for us to review.

### iii. Defendant's Erasure of Computer Files

Defendant argues that the district court erred by refusing to consider (as evidence of his efforts to reform) his deletion of the child-pornography files from his computer several days before ICE executed its search warrant. This refusal, Defendant claims, was based on a clearly erroneous finding that Defendant was motivated solely by fear of apprehension and not by genuine conscience. The challenged statement of the court was as follows:

> I'm hard-pressed to weigh too seriously his deletion of the images two or three days before he was arrested, because I tend to share the suspicions that [the government] has that perhaps that was done in part because, for whatever reason, he suspected that perhaps the noose was tightening. And even if not the case, the fact that he had looked at them only three days before arrested makes it hard pressed for me to credit him with having certainly decided to put all that behind him and truly lead a new life.

R., Vol. 3 at 111. Defendant asserts that "[c]ontrary to the district court's belief, Defendant had not been 'tipped off' as the Government and court suspected." Aplt. Br. at 29.

We do not believe that the district court's words can be characterized as factual findings, let alone clearly erroneous ones. The court spoke simply of its "suspicions" and twice used the word "perhaps" in elaborating on what those suspicions were. Also, immediately after doing so, it allowed for the possibility that its suspicions were false and explained why its judgment was correct regardless. There was no error.

**D. Substantive Reasonableness of Defendant's Sentence**

Defendant's final claim on appeal is that the district court's sentence of 102 months' imprisonment was substantively unreasonable. In Defendant's view, "the only substantively reasonable sentence in this case is the five-year mandatory minimum" required by 18 U.S.C. § 2252(b)(1). *Id.* at 31. In support of leniency, he points to his deletion of the files from his computer, his childhood history of sexual abuse, his having obtained counseling after his arrest, and his vulnerability to prison abuse. We are not persuaded.

Defendant's 102-month sentence was below the range of 151 to 188 months recommended by the Guidelines. We apply a "rebuttable presumption of reasonableness to a below-guideline sentence challenged by the defendant as unreasonably harsh." *United States v. Balbin-Mesa*, 643 F.3d 783, 788 (10th Cir. 2011). Defendant's arguments are not sufficiently compelling to rebut the presumption.

## III. CONCLUSION

We AFFIRM the judgment of the district court.