FILED
**United States Court of Appeals**
**Tenth Circuit**

**January 6, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

JEREMIAS ROBERTSON,

      Defendant - Appellant.

No. 18-2165

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:17-CR-02573-JAP-1)**
_____

Margaret A. Katze, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant - Appellant.

Howard R. Thomas, Assistant United States Attorney (and John C. Anderson, United States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff - Appellee.
_____

Before **BRISCOE**, **KELLY**, and **BACHARACH**, Circuit Judges.
_____

**KELLY**, Circuit Judge.
_____

      Defendant-Appellant Jeremias Robertson pled guilty to possession of a firearm

and ammunition by a felon, 18 U.S.C. § 922(g)(1), and was sentenced to a term of 84

months' imprisonment followed by three years' supervised release.[1]  On appeal he challenges the district court's findings that he pointed a gun at an officer, thereby resulting in a four-level enhancement for use or possession of a firearm in connection with another felony offense (aggravated assault with a deadly weapon), and a six-level enhancement for assaulting the officer in a manner creating a substantial risk of bodily injury.  U.S.S.G. §§ 2K2.1(b)(6) & U.S.S.G. § 3A1.2(c)(1).  He argues that (1) the district court should have required proof by clear and convincing evidence, (2) under any standard of proof, the evidence did not support the district court's findings, and (3) the district court erroneously drew a negative inference from his silence at the sentencing hearing.  See Aplt. Br. at 1–3.  We exercise jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and affirm.

**Background**

The district court held an evidentiary hearing.  In August 2017, Albuquerque Police Department officer Steven Arias responded to a 911 call reporting a man walking through the downtown part of the city "pulling out a gun" and "pointing it at people."  Aplee. Br. at 1 (citing V R. Ex. W).  Mr. Robertson, who matched the description given by the 911 caller, was walking in the area when the officer arrived.  Id. at 2.  Mr.

---

[1] The district court based the sentence upon an offense level of 27.  In addition to the enhancements, the district court applied a three-level reduction for acceptance of responsibility and reduced his criminal history category to category IV.  The guideline range for a person in category IV, level 27 who was convicted of this crime is 100–120 months' imprisonment (the upper bound of the range is capped at 120 months, the statutory maximum for the crime).

Robertson crossed First Street and headed northeast through a dirt parking lot. Aplt. Br. at 5. Officer Arias stopped his police vehicle at the north end of First Street. Id. Spotting Mr. Robertson, Officer Arias accelerated toward him. Id. Mr. Robertson quickened his pace, crossed to the sidewalk on the east side of First Street, and passed out of Officer Arias's line of sight behind a tow truck. IV R. 21–22. Officer Arias stopped his vehicle next to the tow truck and exited. Id. The officer testified that based on the description on the 911 call and Mr. Robertson's proximity to the area, he believed there was a high likelihood that an object in Mr. Robertson's right hand was a gun. Id. at 23.

Officer Arias rounded the tow truck and spotted Mr. Robertson, who continued to move through the parking lot while partially obscured by cars. Id. 23:24–24:1. Officer Arias crouched behind a car for cover and twice shouted "show me your hands." Id. at 24:22; see Aplt. Br. at 6. According to Officer Arias, Mr. Robertson then "kind of turned to the west looking over his left shoulder with a small caliber handgun in his right hand, and he pointed it at [Officer Arias]." IV R. 23:1–11; Aplt. Br. at 3. Officer Arias then took cover behind a sedan. IV R. 23:20–24:3.

When Officer Arias looked back, Mr. Robertson was again "moving at a brisk pace" toward the northeast. Aplt. Br. at 4. Officer Arias testified that he repeated his commands and Mr. Robertson responded by saying something to the effect of "I didn't do anything wrong," and "don't shoot me." Id. 56:1–13. Officer Arias testified that Mr. Robertson then again pointed a gun at him over his shoulder, and the officer identified it as a gun "because of the barrel." Id. at 25:9–13. Fearing that Mr. Robertson might shoot, Officer Arias fired a single round from his service rifle toward Mr. Robertson's chest. Id.

3

at 14–17.  The bullet entered Mr. Robertson's chest under his left armpit and incapacitated him.  Id. at 20–24.  A handgun was later recovered near where Mr. Robertson fell to the ground.  Aplt. Br. at 7.

The district court also heard testimony from Johnny Pinson, a bystander.  Mr. Pinson testified that he saw Mr. Robertson cross First Street before Officer Arias arrived.  IV R. 123:20–24.  According to Mr. Pinson, Mr. Robertson appeared to be listening to music at the time and did not have a gun in his hand.  Id. at 123:2–10.  Mr. Pinson also testified that he did not see a gun in Mr. Robertson's hands when he turned in response to Officer Arias's commands.  Id. at 123:13–15.  However, he later testified that "wouldn't have seen" whether Mr. Robertson had a gun in his right hand.  Id. at 135:8–9.

Mr. Robertson also presented evidence of Officer Arias's troubled disciplinary record and his "proclivity for violent confrontation."  Aplt. Br. at 8.  Officer Arias was removed from a Special Weapons and Tactics (SWAT) team because he fired three "bean bag" shots at a man's head.  Id.  He was also given a 32-hour suspension and a letter of reprimand for that incident.  Id.  Officer Arias received a verbal reprimand for improper use of force after he pointed his firearm at a man who had reported domestic violence involving his neighbor.  Id. at 8–9.  He was suspended for 40 hours and sent to anger management counseling for assaulting a police lieutenant.  Id. at 9.

The court acknowledged that it "had serious questions" about Officer Arias because of his disciplinary history.  IV R. 161:23.  Nevertheless, it found his testimony "supported in this case."  Id. at 161:24.  The court also stated the following: "I'm a little

4

surprised that I didn't hear from the main player who would tell us that 'no, I did not point a gun at Officer Arias.' I didn't hear that testimony." Id. at 161:25–162:2.

Counsel stated Mr. Robertson's position that he never pointed a gun at Officer Arias. Id. at 162:3–10. The district court then said: "But he ha[s]n't testified to that under oath . . . And I've heard other testimony under oath that is not countered by that." Id. The district court explained that Mr. Pinson, while an "honest person," had given testimony that did "not fit what was shown on the video" evidence. Id. at 163. The district court ultimately found that "testimony under oath, uncontradicted by direct testimony to the contrary," supported a finding that Mr. Robertson had twice pointed the gun at Officer Arias. Id. at 166.

**Discussion**

This court reviews a district court's factual findings at sentencing for clear error and its legal conclusions de novo. United States v. Lozano, 921 F.3d 942, 946 (10th Cir. 2019). Factual findings are clearly erroneous if they are without factual support in the record or if the court is left with a definite and firm conviction that a mistake has been made. Id. We view the evidence in the light most favorable to the government. Id.

Mr. Robertson urges a higher standard of proof. The district court found—over Mr. Robertson's objection—that he pointed a gun at a law enforcement officer. This resulted in an increase of 10 levels, which more than doubled the initial guidelines range from 46–57 months to 120 months (the statutory maximum). Aplt. Br. at 24. Because this disputed fact had a disproportionate effect on his sentence, Mr. Robertson contends

5

that due process requires the government to prove it by clear and convincing evidence rather than by a preponderance of the evidence. Id. at 22 (citing United States v. Ray, 704 F.3d 1307, 1314 (10th Cir. 2013)).

Generally, factual findings at the sentencing stage must be supported by a preponderance of the evidence. United States v. Olsen, 519 F.3d 1096, 1104 (10th Cir. 2008). The Supreme Court has not yet held that due process requires a heightened standard when a contested fact significantly changes the guidelines range of the sentence. Five circuits have rejected that argument. See United States v. Villareal-Amarillas, 562 F.3d 892, 894–98 (8th Cir. 2009); United States v. Grubbs, 585 F.3d 793, 800–03 (4th Cir. 2009); United States v. Fisher, 502 F.3d 293, 295–308 (3d Cir. 2007); United States v. Brika, 487 F.3d 450, 461–62 (6th Cir. 2007); United States v. Reuter, 463 F.3d 792, 792–93 (7th Cir. 2006). Mr. Robertson points to a test adopted by the Ninth Circuit to determine whether a fact must be proven by heightened standard at sentencing. Aplt. Br. at 22; see United States v. Hymas, 780 F.3d 1285, 1290 (9th Cir. 2015). The Ninth Circuit is the only circuit to adopt such a standard.

The Supreme Court has not adopted a heightened standard of proof at sentencing for contested facts, thus we hold that the correct standard of proof in this case was a preponderance of the evidence. This issue has been foreclosed in this Circuit. See United States v. Constantine, 263 F.3d 1122, 1125 n.2 (10th Cir. 2001) ("The Supreme Court has left the choice of standard to the discretion of the courts of appeals . . . and within the Tenth Circuit[,] the arguments for higher standards are 'foreclosed by binding precedent.'" (quoting United States v. Valdez, 225 F.3d 1137, 1143 n.2 (10th Cir. 2000));

6

United States v. Washington, 11 F.3d 1510, 1516 (10th Cir. 1993) ("We have clear holdings that the preponderance standard applies to fact finding in the sentencing process. . . . At least as concerns making guideline calculations the issue of a higher than a preponderance standard is foreclosed in this circuit.").[2]

Mr. Robertson next contends that the district court's factual finding that he assaulted Officer Arias in a manner creating a substantial risk of bodily injury was improper "[u]nder any standard of proof." Aplt. Br. at 26. We review a district court's factual findings for clear error; because we decline to adopt a heightened standard for the fact at issue in this case, we look for clear error in the findings that the judge made by a preponderance of the evidence. See Lozano, 921 F.3d at 946.

Mr. Robertson argues essentially that the district court erred when it credited Officer Arias's testimony that Mr. Robertson simultaneously pointed a handgun at him and pleaded not to be shot. See Aplt. Br. at 26–31. The district court heard and considered a variety of claims about that moment and assessed the credibility of the officer under direct and cross-examination. Because the district court is in the best position to observe witnesses, "[t]his court is loath to second-guess a district court's determination of a witness's credibility." United States v. Asch, 207 F.3d 1238, 1243 (10th Cir. 2000). The fact that the district court "had serious questions" about Officer

---

[2] We note that in Ray, we stated that we have "left open the possibility" that an exceptional case might exist where a heightened standard is proper. 704 F.3d at 1314. However, our caselaw predating Ray is clear that the issue was already settled and one panel cannot overrule another. See United States v. Holcomb, 853 F.3d 1098, 1100 (10th Cir. 2017).

Arias's background but nonetheless decided that "his testimony is supported in this case" shows that it engaged in exactly the kind of on-the-ground balancing and demeanor judgments for which district courts administering hearings are particularly well-suited. See IV R. 161:23–24. The district court's findings by a preponderance thus have support in the record and were not in clear error.

Mr. Robertson's final argument is that the district court drew a negative inference from his decision not to testify at the sentencing hearing. Aplt. Br. at 31. Mr. Robertson argues that United States v. Mitchell, 526 U.S. 314 (1999) establishes that it is reversible error for a sentencing judge to "draw[] an adverse inference from the accused's silence at sentencing." Aplt. Br. at 32. At sentencing, the court made the following remark:

> THE COURT: I have some serious questions about [Officer Arias], frankly. But I think his testimony is supported in this case. I'm a little surprised that I didn't hear from the main player who would tell us that, "No, I did not point a gun at Officer Arias." I didn't hear that testimony.

IV R. 161:23–162:2. Mr. Robertson argues that this comment shows a violation of his Fifth Amendment right to remain silent and to due process. Aplt. Br. at 31.

Mr. Robertson contends that he sufficiently objected at sentencing by reminding the court that Mr. Robertson did not have to testify to challenge the application of enhancements because other testimony contradicted Officer Arias's version of events, and that any further objection would have been futile. Aplt. Reply Br. at 22; see IV R. 162:11–14. We disagree that counsel's objection was sufficient. Because Mr. Robertson raises this specific issue for the first time on appeal, we review the district court's statement for plain error. See United States v. Garcia-Caraveo, 586 F.3d 1230, 1232

8

(10th Cir. 2009).  Plain error is (1) error, (2) that is plain, (3) which affects Mr.

Robertson's substantial rights, and (4) which seriously affects the "fairness, integrity, or

public reputation of judicial proceedings."  Id. (quoting United States v. Romero, 491

F.3d 1173, 1178 (10th Cir. 2007)).  The error must be "clear or obvious."  United States

v. Pablo, 696 F.3d 1280, 1290 (10th Cir. 2012).  It is a high standard for the appellant.

Garcia-Caraveo, 586 F.3d at 1232.

The district court's comments in this case are ambiguous.  Had the district court

said it was basing the sentence on Mr. Robertson's silence, the district court would have

committed error.  The district court expressed "surprise" that it had not heard from Mr.

Robertson, which could mean that the court was relying upon his failure to take the stand.

But the statement also could be taken at face value.  The court's statement that Officer

Arias's testimony "was uncontradicted by direct testimony to the contrary" was merely

an observation that after discounting Johnny Pinson's testimony, see IV R. 135:4–16,

157:18–158:6, the only remaining testimony on the issue was that Mr. Robertson pointed

the gun at Officer Arias.  Given the ambiguity in the court's statements, if there was

error, it was not "clear or obvious" and would not satisfy the second element of the plain

error test.  See United States v. Fonseca, 744 F.3d 674, 684 (10th Cir. 2014) (concluding

that ambiguity in the district court's ruling was not "plainly or obviously improper"); see

also United States v. Draffin, 286 F.3d 606, 610 (D.C. Cir. 2002).

AFFIRMED.

9

No. 18-2165, *United States v. Robertson*
**BRISCOE**, Circuit Judge, concurring and dissenting.

I agree with the majority's conclusion that the district court was correct in applying a preponderance of the evidence standard of proof, although I would also address and reject Mr. Robertson's additional contention that the district court erred in its application of the preponderance standard. *See* Aplt. Br. at 15–21. The record provides no indication that the district court applied an "ample evidence" standard, *id.* at 16, or that it merely examined the quantum of the evidence presented, *id.* at 17. I agree that the district court did not clearly err in its factual findings.

I disagree, however, with the majority's conclusion that the district court did not plainly err by drawing an adverse inference from Mr. Robertson's silence. By holding Mr. Robertson's silence against him in determining facts bearing upon the severity of his sentence, the district court committed plain error and imposed an impermissible burden on the exercise of his constitutional right against self-incrimination. I would, therefore, reverse and remand for resentencing.

As regards the first prong of plain error, Mr. Robertson has shown that the district court erred at sentencing by drawing an adverse inference from his silence when determining whether Mr. Robertson pointed a gun at Officer Arias. The Supreme Court held in *Mitchell* that a district court commits reversible error by drawing any "*adverse inference* from the defendant's silence" at sentencing "in determining facts about the crime which bear upon the severity of the sentence." 526 U.S. at 316–17, 330 (emphasis added) (concluding that the district court imposed an impermissible burden on the

exercise of the constitutional right against compelled self-incrimination "[b]y holding [the defendant's] silence against her in determining the facts of the offense at the sentencing hearing"). The majority contends that the district court's statements regarding Mr. Robertson's silence at sentencing are ambiguous, but it omits critical portions of the sentencing transcript. The full exchange between Mr. Robertson's counsel and the court was as follows:

> THE COURT: I have some serious questions about [Officer Arias], frankly. But I think his testimony is supported in this case. I'm a little surprised that I didn't hear from the main player who would tell us that, "No, I did not point a gun at Officer Arias." I didn't hear that testimony.
>
> MS. KATZE: Well, we're here in a contested sentencing hearing because my client is saying, as we said throughout the objections in the sentencing memo, that he did not point the gun at - -
>
> THE COURT: But *he* hadn't testified to that *under oath* . . . And I've heard other testimony under oath that is not countered by that.

ROA, Vol. IV, at 161–62 (emphasis added).

The district court's explicit consideration of Mr. Robertson's failure to testify *under oath*, as evidenced by this exchange with defense counsel, makes clear that Mr. Robertson's silence factored into the district court's analysis of the "other testimony" presented at the sentencing hearing. The district court would not have repeatedly referenced the lack of testimony from Mr. Robertson in analyzing Officer Arias's testimony if Mr. Robertson's failure to testify was not a consideration in its analysis. When, as we see here, the defendant's silence is a factor which persuades the sentencing

2

court to rely on the testimony of other witnesses, the court commits error under *Mitchell*. *See Mitchell*, 526 U.S. at 319 (finding reversible error where "'[o]ne of the things' persuading the [district] court to rely on the testimony of the codefendants [at sentencing] was [the defendant's] 'not testifying to the contrary'"). While the district court at other times discussed a lack of "direct testimony" contradicting Officer Arias's account *generally*, *see* ROA, Vol. IV, at 166, the district court's focus in the above exchange was on the absence of one specific piece of evidence—the testimony of Mr. Robertson. *See id.* at 162 ("But *he* hadn't testified to that under oath.") (emphasis added).[1] The district court's own statements make clear that it considered Mr. Robertson's silence in determining whether Mr. Robertson pointed a gun at Officer Arias.

Having concluded that the district court committed error, I next consider whether the error is plain—that is, whether it is "clear under current law." *United States v. Olano*, 507 U.S. 725, 734 (1993). "An error is clear where 'the Supreme Court or this court [ ] [has] addressed the issue' or where 'the district court's interpretation was clearly erroneous.'" *United States v. Cordery*, 656 F.3d 1103, 1106 (10th Cir. 2011) (quoting *United States v. Ruiz-Gea*, 340 F.3d 1181, 1187 (10th Cir. 2003)). That is the case here. *Mitchell* made clear that a district court "may not draw [an] adverse inference" from a defendant's silence "in determining facts about the crime which bear upon the severity of

---

[1] I emphasize that Mr. Robertson did not need to present any evidence whatsoever because "the burden of proof fell on the government to trigger the enhancement." *United States v. Gonzales*, 931 F.3d 1219, 1224 (10th Cir. 2019); *see Mitchell*, 526 U.S. at 330 ("[t]he Government retains the burden of proving facts relevant to the crime at the sentencing phase and *cannot enlist the defendant in this process* at the expense of the self-incrimination privilege") (emphasis added).

3

the sentence." 526 U.S. at 316–317. Unlike the majority, I do not view the district court's statements regarding Mr. Robertson's silence to be ambiguous. As such, Mr. Robertson has satisfied the second prong of plain error, and the government has not argued otherwise.[2]

Mr. Robertson has also satisfied the third prong of plain error—that is, whether the error affects his "substantial rights." *United States v. Hasan*, 526 F.3d 653, 664 (10th Cir. 2008). In this analysis, "we ask only whether there is 'a reasonable probability that, but for the error claimed, the result of the proceeding would have been different.'" *Id.* (quoting *United States v. Andrews*, 447 F.3d 806, 811 (10th Cir. 2006)). To satisfy this burden, Mr. Robertson "must show a reasonable probability sufficient to undermine confidence in the outcome at [his] sentencing." *United States v. Yurek*, 925 F.3d 423, 446 (10th Cir. 2019). "Confidence in the outcome can be undermined even if [Mr. Robertson's] showing would not satisfy the preponderance-of-the-evidence standard." *Id.* And "[i]n light of the constitutional nature of the error," we must conduct this analysis less rigidly than we would otherwise. *United States v. Dazey*, 403 F.3d 1147, 1177 (10th Cir. 2005) (applying a less rigid approach to the third prong).

In this case, the district court's own statements indicate that it relied on Mr. Robertson's silence in crediting the testimony of Officer Arias. *See United States v. Trujillo-Terrazas*, 405 F.3d 814, 820 (10th Cir. 2005) (considering a district court's comments at sentencing when determining whether the plain error prejudiced the

---

[2] The government only addresses the first prong of plain error. *See* Aple. Br. at 23–24.

4

defendant).  Taking the requisite less rigid approach appropriate to constitutional error, a reasonable probability exists that the district court's factual finding would have been different had it not relied on Mr. Robertson's silence.[3]  And if the district court had discredited Officer Arias, its starting point of 120 months would have been reduced by more than one-half (46 to 57 months), or even more if the 37 to 46 month range applied. "When the court's starting point is skewed a 'reasonable probability' exists that its final sentence is skewed too."  *United States v. Sabillon-Umana*, 772 F.3d 1328, 1333 (10th Cir. 2014); *see Yurek*, 925 F.3d at 447 (finding the third prong met where there was a reasonable probability that the district court would have granted a mitigating-role adjustment under the correct test, which would have lowered the guideline range).  Mr. Robertson has satisfied the third prong of plain error.

To satisfy the fourth prong, Mr. Robertson must show that the district court's error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Bustamante-Conchas*, 850 F.3d 1130, 1144 (10th Cir. 2017) (en banc). Where, as here, "an error affects the calculation of a defendant's guideline range, the fourth prong is ordinarily satisfied when the first three prongs are satisfied."  *Yurek*, 925 F.3d at 447.  I conclude that the district court plainly erred by drawing an adverse inference from Mr. Robertson's silence at his sentencing hearing.  I would reverse and remand for resentencing.

---

[3] "Of course, our standard is couched in terms of probability, and we cannot say with certainty what the district court will find on remand."  *Hasan*, 526 F.3d at 665.