[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-12438

_____

D.C. Docket No. 4:14-cr-00001-MW-CAS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DONALD EUGENE CREEL,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Florida

_____

(April 21, 2015)

Before TJOFLAT, WILLIAM PRYOR, and BARKSDALE,[*] Circuit Judges.

WILLIAM PRYOR, Circuit Judge:

This appeal requires us to decide whether the definition of "[d]istribution" of

child pornography under the Sentencing Guidelines, U.S.S.G. § 2G2.2(b)(3)(F)

_____

[*] Honorable Rhesa H. Barksdale, United States Circuit Judge for the Fifth Circuit, sitting by
designation.

(Nov. 2013), includes an element of *mens rea*. Donald Eugene Creel pleaded guilty to receipt of child pornography, 18 U.S.C. §§ 2252A(a)(2)(A), (b)(1), and received an enhanced sentence when the district court ruled that he "[d]istribut[ed]" child pornography, U.S.S.G. § 2G2.2(b)(3)(F), through a file sharing program on his computer. Because distribution of child pornography, *id.*, does not require an offender to know that he made child pornography accessible to others, we affirm Creel's sentence.

## I. BACKGROUND

In Florida, Creel downloaded child pornography to his computer through an internet-based file sharing program. File sharing programs allow users "to search for files located in the shared folder that is created by the software on the computers of other users, and when found, the requesting user can download the file." *United States v. Vadnais*, 667 F.3d 1206, 1208 (11th Cir. 2012). "The copied file is placed in a designated sharing folder on the requesting user's computer, where it is available for other users to download in turn . . . ." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 921, 125 S. Ct. 2764, 2771 (2005).

After police in Pennsylvania downloaded child pornography from Creel's computer through the file sharing program, a grand jury indicted Creel for one count of knowing receipt or distribution of child pornography, 18 U.S.C.

2

§§ 2252A(a)(2)(A), (b)(1), and one count of possession of child pornography, *id.*
§§ 2252A(a)(5)(B), (b)(2). He pleaded guilty to the first count, and the government
agreed to dismiss the second count.

The presentence investigation report calculated Creel's guideline range as
151 to 188 months of imprisonment, U.S.S.G. ch. 5, pt. A, Sentencing Table,
including a two-level enhancement for "[d]istribution" of child pornography, *id.*
§ 2G2.2(b)(3)(F). Creel objected to the sentencing enhancement on the ground that
he did not know that other users of the file sharing program could access the child
pornography that he had downloaded. The probation officer responded that,
according to a police interview with Creel, Creel's son installed the program on
Creel's computer and taught Creel how to use it, but Creel later "figured out some
[o]f it" on his own. Creel told police that he searched for terms such as "lolita" and
"teen," and that the results of the search were "whatever they got that matches the
search terms." The probation officer "believe[d] this statement [was] telling as to
how much [Creel] knew about the concept of file-sharing, in that [Creel]
understood that files [were] being downloaded from other users." The probation
officer also "noted that[,] in [the program], the upload speeds are clearly indicated
in a column adjacently located to the column that indicates download speeds."

At Creel's sentencing hearing, a special agent for Immigration and Customs
Enforcement testified about a recorded interview between Creel and police. The

3

special agent testified that Creel admitted that he used the program to download child pornography for a period of one-and-one-half months and that he had to reformat the hard drive on his computer and reinstall the Windows operating system "several times" because one of the files he downloaded contained a computer virus. The special agent testified that "[i]t was clear from . . . listening to the audio clip that . . . Creel understood that he was using a file-sharing program."

Based on the presentence investigation report and the special agent's testimony, the district court ruled that Creel distributed child pornography. *Id.* The district court found "that file sharing was used, that he knew it was being used, was accessing it." The district court also found "that the presentence investigation report is accurate" and that, "even if knowledge was critical or dispositive, . . . [Creel] indeed meets the qualifications for the two-level enhancement for distribution under 2G2.[2](b)(3)[(F)]." The district court varied downward from Creel's guideline range and sentenced him to 84 months of imprisonment.

## II.  STANDARDS OF REVIEW

"The district court's factual findings are reviewed for clear error, and its application of those facts to justify a sentencing enhancement is reviewed de novo." *United States v. Spriggs*, 666 F.3d 1284, 1286 (11th Cir. 2012). "For a factual finding to be clearly erroneous, this [C]ourt, after reviewing all of the evidence, must be left with a definite and firm conviction that a mistake has been

4

committed." *United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1137 (11th Cir. 2004) (internal quotation marks and citation omitted). The factual findings "cannot be based on speculation," *United States v. Newman*, 614 F.3d 1232, 1238 (11th Cir. 2010), but the district court may draw "reasonabl[e] . . . infer[ences]" from the facts in the record, *United States v. Scott*, 441 F.3d 1322, 1327 (11th Cir. 2006).

## III.  DISCUSSION

Creel argues that the district court erred when it enhanced his sentence for "[d]istribution" of child pornography, U.S.S.G. § 2G2.2(b)(3)(F). Creel argues that the enhancement for distribution requires him to know that other users of the file sharing program could access the child pornography on his computer. He argues that there was no evidence that he had that knowledge. Creel's arguments fail.

The commentary to section 2G2.2 of the Guidelines defines distribution as "any act, including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor." *Id.* § 2G2.2, cmt. n.1. The commentary also states that, "[a]ccordingly, distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing but does not include the mere solicitation of such material by a defendant." *Id.*

No element of *mens rea* is expressed or implied by this definition. "We look to the plain language of the definition[] to determine [its] elements, and we

5

presume that . . . the Sentencing Commission said what [it] meant and meant what [it] said." *United States v. Smith*, 775 F.3d 1262, 1267 (11th Cir. 2014) (internal quotation marks and citation omitted). The definition requires only that the "act . . . relate[s] to the transfer" of child pornography. U.S.S.G. § 2G2.2, cmt. n.1.

If the Sentencing Commission "meant" to require knowledge, it would have "said" as much. *Smith*, 775 F.3d at 1267. Section 2G2.2(B)(3) provides six sentencing enhancements for different types of distribution of child pornography, including a five-level enhancement for "[d]istribution to a minor." U.S.S.G. § 2G2.2(b)(3)(C). In the same comment to the Guidelines where distribution is defined, "[d]istribution to a minor" is defined as "*knowing* distribution to an individual who is a minor at the time of the offense." *Id.* § 2G2.2, cmt. n.1 (emphasis added). That both terms are defined in the same comment, *id.*, but only one definition includes an express element of *mens rea*, implies that the other definition has no element of *mens rea*. *See Fedorenko v. United States*, 449 U.S. 490, 512–13, 101 S. Ct. 737, 750 (1981) (explaining that the "deliberate omission of [a] word" that appears in an adjacent textual provision "compels the conclusion" that the omitted word should not be "impl[ied]"). Although we have stated in dicta that distribution occurs "[w]hen the user [of a file sharing program] knowingly makes the files [on his computer] accessible to others," *Spriggs*, 666 F.3d at 1287, our dicta cannot be squared with the plain language of the commentary.

6

Our reading of the commentary comports with two of our sister circuits that have addressed this issue and held that the commentary "unambiguously does not contain a scienter requirement." *United States v. Baker*, 742 F.3d 618, 622 (5th Cir. 2014); *see also United States v. Ray*, 704 F.3d 1307, 1313 (10th Cir. 2013). These sister circuits have held that "the phrase ['any act . . . related to the transfer' of child pornography, U.S.S.G. § 2G2.2, cmt. n.1,] should be construed broadly," *Baker*, 742 F.3d at 621, and that "the drafters of the commentary to [section] 2G2.2 knew how to include a scienter requirement when they wanted to," *Ray*, 704 F.3d at 1313. We acknowledge that four of our sister circuits have held that section 2G2.2(b)(3)(F) requires an individual to know that he "[d]istribut[ed]" child pornography, *United States v. Baldwin*, 743 F.3d 357, 361 (2d Cir. 2014) (holding that "a defendant [must know] that his use of [file sharing] software would make child-pornography files accessible to other users"); *United States v. Layton*, 564 F.3d 330, 335 (4th Cir. 2009) (same); *United States v. Robinson*, 714 F.3d 466, 468 (7th Cir. 2013) (same); *United States v. Dodd*, 598 F.3d 449, 452 (8th Cir. 2010) (holding that use of a file sharing program creates a presumption that an individual knew he distributed child pornography), but those decisions are inconsistent with the "plain language" of the commentary, *Smith*, 775 F.3d at 1267.

Finally, we hold, in the alternative, that even if knowledge is an element of "[d]istribution," U.S.S.G. § 2G2.2(b)(3)(F), the district court did not clearly err

7

when it found that Creel knew that other users of the file sharing program could access the child pornography on his computer. The district court stated that the special agent's testimony was "credible" and the presentence investigation report was "accurate," and "[w]e defer to the credibility choices made by the district court," *Harris v. Schonbrun*, 773 F.3d 1180, 1183 (11th Cir. 2014) (internal quotation marks and citation omitted). Based on those sources, the district court was entitled to find that Creel knew that other users could access the child pornography on his computer.

## IV.  CONCLUSION

We **AFFIRM** Creel's sentence.