**UNITED STATES of America,**

v.

**Jefferson SANCHEZ, Defendant.**

**Case No. 15–20076–CR.**

United States District Court, S.D. Florida.

Signed July 9, 2015.

Jonathan Kobrinski, U.S. Attorney's Office, Miami, FL, for United States of America.

Bijan Sebastian Parwaresch, Miami Beach, FL, for Defendant.

## *ORDER OVERRULING DEFENDANT'S OBJECTION THAT HE SHOULD RECEIVE THE TWO–LEVEL RE-DUCTION UNDER UNITED STATES SENTENCING GUIDE-LINE § 2G2.2(b)(1)*

JOAN A. LENARD, District Judge.

**THIS CAUSE** is before the Court on Defendant Jefferson Sanchez's ("Defendant") First Objection to the Presentence Investigation Report, ("Objection," D.E. 20), filed May 28, 2015. Therein, Defendant objected that the Probation Officer did not reduce his guideline calculation by two levels under United States Sentencing Guideline ("U.S.S.G.") § 2G2.2(b)(1). (*Id.* ¶ 6.) The Government filed a Response on June 6, 2015 ("Response," D.E. 24), to which Defendant filed a Reply on June 16, 2015, ("Reply," D.E. 30). The Government filed a Second Response on June 26, 2015, ("Second Response," D.E. 45). At a June 29, 2015 sentencing hearing, the Court orally ruled that Defendant was not entitled to the two-level reduction in Section 2G2.2(b)(1). (Transcript (6/29/15) at 41.)[1] The Court's oral ruling is adopted, supplemented, and modified as follows.

## I. Background

On February 12, 2015, a Grand Jury returned a two-count Indictment charging Defendant with (i) receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2) & (b)(1) ("Count 1") and (ii) possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) & (b)(2) ("Count 2"). (Indictment, D.E. 4 at 1–2.) On February 17, 2015, Plaintiff pled not guilty to both charges. (*See* Arraignment Information Sheet, D.E. 7 at 1.) On April 8, 2015, Defendant entered into a Plea Agreement pursuant to which he would plead guilty to Count 1 (receipt of child pornography) in exchange for the Government dismissing Count 2 (possession of child pornography). (Plea Agreement, D.E. 14 at 1.)

On April 8, 2015, the Court held a Rule 11 change-of-plea hearing. (*See* D.E. 12.) During that proceeding, the Court reviewed with Defendant the Plea Agreement and a Stipulated Factual Statement which Defendant signed and which states in its entirety:

If this matter were to proceed to trial, the Government would prove the following beyond a reasonable doubt.

On January 29, 2015, a search warrant was executed at Jefferson Sanchez's (hereinafter Defendant) residence, in the Southern District of Florida, after cyber-crimes agents from the Secret Service determined that a computer user in the residence was using a peer-to-peer file-sharing program to make child pornography available and possess child pornography at the residence. During the search, law enforcement seized a Samsung laptop computer.

Defendant was present when the search warrant was executed, along with another individual who was staying in another room of the residence. Defendant resided in the master bedroom suite. The laptop was found inside his closet covered by clothes and appeared broken and wet. Law enforcement then observed a water trail from the bathroom to the closet where the laptop was discovered.

After using a blow dryer, law enforcement conducted a forensic preview of

---

1. The transcripts to which the Court cites are unedited rough drafts. Page numbers may be different in the final, edited versions.

the laptop which revealed the ARES program was installed, that there were videos depicting child pornography on the laptop, including three that defendant received through a download using ARES on January 29, 2015. As an example, there was a 10 minute and 40 second (10:40) video which depicts several different prepubescent females performing oral sex with adult males. The video also depicts some of the adult males ejaculating into the mouths of the prepubescent females.

During an ensuing interview conducted in Spanish with Spanish-speaking law enforcement officers, Defendant waived his *Miranda* rights both verbally and in writing. According to law enforcement officers who were present, Defendant admitted that he had been downloading and viewing child pornography for the past few years using the ARES network, that he downloaded pornographic videos involving girls as young as five and six, and his preference was for videos involving ten to eleven year old girls. He stated when he downloaded the videos, he would keep them for a day or two and then delete them. He admitted he did it for his sexual gratification.

The combined evidence shows, and Defendant admits, he knowingly received files containing visual depictions of minors engaged in sexually explicit conduct by downloading them from ARES over the internet, that he did so on or about January 29, 2015, and he knew that the files he downloaded on that date contained depictions of minors engaged in sexually explicit conduct.

This factual proffer is not intended as a complete recitation of the defendant's activities in this case. It is submitted solely to provide a factual basis for the defendant's guilty plea.

(D.E. 15 at 1–2.) After the Government read this statement at the Rule 11 hearing, Defendant stated that he agreed with it and had no corrections or deletions. (Transcript (4/8/15) at 15.)[2] (Transcript

---

2. Although Defendant stated that he had no corrections or deletions to the Stipulated Factual Statement, he wanted to clarify that although he downloaded videos involving five and six year-old girls, he preferred girls "that were of higher age." (Transcript (4/8/15) at 15.) After Defendant had clarified his preference, the following exchange occurred:

MR. PARWARESCH [Defense Counsel]: ... He's admitting to the allegation, Judge. He's just not saying—and he's admitting that he downloaded them, that he viewed them. He's just saying that the really young children, ages 5 and 6, he would delete them and not go through actually viewing the whole ones.

THE COURT: So what is the correction to the written factual proffer? You signed the written factual proffer. He signed the written factual proffer. Is there a correction to the written factual proffer?

MR. PARWARESCH: Judge, not really, because the factual proffer reads that the agents are reporting this. We agree. We read the reports. We agree that the agents

reported. It's just that little clarification, what his preference is.

THE COURT: So as I understand what he stated, he would download videos that involved young children of 5 or 6, but he preferred videos and actually utilized videos of older children.

MR. PARWARESCH: Correct, Judge.

THE COURT: That's correct?

MR. PARWARESCH: That's correct, Judge. Yes.

THE DEFENDANT: Yes. That's correct. (*Id.*) The statement that Defendant preferred ten to eleven year-old girls later appeared in Paragraph 15 of the PSR. Defendant objected to this statement, alleging that he told law enforcement officers that he preferred girls "over the age of 13." (Objections, D.E. 20 ¶ 2.) Defendant noted this Objection at the sentencing hearing when the Court was making its findings pursuant to 18 U.S.C. § 3553(a). (*See* Transcript (6/29/15) at 55–56.) However, Defendant did not state at the Rule 11 hearing that he preferred girls over the age of thirteen or that he told law enforcement that he preferred girls over the age of

(4/8/15) at 13–16.) Defendant then pled guilty to Count 1. (*Id.* at 16.)

The Probation Officer submitted the Presentence Investigation Report ("PSR") on May 18, 2015, followed by an Addendum on June 17, 2015. The Offense Level Computation assigned Defendant a Base Offense Level of 22 and included, inter alia, a two-level increase pursuant to U.S.S.G. § 2G2.2(b)(3)(F) "[b]ecause the offense involved distribution...." (PSR ¶¶ 22, 24.) Defendant objected to this enhancement on the grounds that "he had no intention of distributing any materials and did not plea to distributing the materials." (Addendum at 2.) He further requested a two-level reduction pursuant to U.S.S.G. § 2G2.2(b)(1) "because he claims his conduct was limited to the receipt of material and he did not intend on trafficking in or distributing that material." (*Id.* at 3.)

The sentencing hearing began on June 22, 2015. (*See* Minute Entry, D.E. 41.) On that date, the Court addressed Defendant's objection to the two-level enhancement for distribution under Section 2G2.2(b)(3)(F). (Transcript (6/22/15) at 8–15.) Defense counsel argued that the two-level enhancement for distribution should not apply because Defendant pled guilty only to receipt of child pornography and that he "had no intention of sharing this information." (*Id.* at 8.) He further argued that at the time of arrest he told law enforcement that "he does not have the ability to share these files and he doesn't understand the full functioning of the Ares[3] download system." (*Id.*) The Gov-

ernment argued that under *United States v. Creel*, 783 F.3d 1357, 1360 (11th Cir. 2015), the sentencing enhancement for distribution of child pornography does not contain a *mens rea* element, so Defendant's alleged lack of intent or knowledge was irrelevant. (*Id.* at 11.) It further argued that even if there was a knowledge requirement, the facts in this case rebut Defendant's lack-of-knowledge argument because Defendant admitted to downloading child pornography through the Ares network for three to four years. (*Id.* at 11–12.)

The Court ultimately overruled Defendant's objection pursuant to *Creel.* (*Id.* at 14–15.) Specifically, it found there is no *mens rea* requirement for "distribution," which is defined by Application Note 1 under Section 2G2.2 as " "any act ... related to the transfer of material involving the sexual exploitation of a minor." " (*Id.* at 13 (quoting *Creel*, 783 F.3d at 1360 (quoting U.S.S.G. § 2G2.2 cmt. n. 1)).) Thus, notwithstanding Defendant's argument that he unintentionally and unknowingly distributed child pornography, the two-level enhancement applied.[4] (*Id.* at 14.)

Defendant then argued that notwithstanding the two-level enhancement for distribution, he was entitled to the two-level reduction under Section 2G2.2(b)(1) because his conduct was limited to the receipt of child pornography and he did not intend to distribute the material. (*Id.* at 16.) "[H]e had absolutely no intention

---

thirteen. The Government maintains that Defendant's statement to law enforcement indicated a preference for ten to eleven year-old girls. (*Id.* at 56.) What Defendant actually said is irrelevant to the Court's disposition.

**3.** Although the Stipulated Factual Statement refers to the program as "ARES," to be consistent with the sentencing hearing transcript

and the actual name of the program, the Court will refer to the program as "Ares."

**4.** The Court's finding that the two-level enhancement applied pursuant to *Creel* was based upon the Offense Conduct contained in the PSR and the agreed-upon facts in the Stipulated Factual Statement, which Plaintiff signed.

nor ability nor understanding of sharing any of these materials. He never posted anything somewhere, sent any of these materials to anybody. All he did is he downloaded them and then he viewed them and then deleted them." (*Id.*) After hearing from the Government, the Court reserved judgment on whether the reduction applied, indicated that it would need to hear evidence and consider case law on the issue, and continued the hearing to June 29, 2015. (*Id.* at 31–32.)

At the June 29, 2015 hearing, Defendant renewed his argument that the two-level reduction should apply, relying on his statements to law enforcement the day of the search but presenting no additional evidence. (*See* Transcript (6/29/15) at 2–5.) Thereafter, the Government called case agent Michael Schnaider of the United States Secret Service to testify regarding the Ares peer-to-peer file-sharing program, in which he was "specifically trained." (Transcript (6/29/15) at 7.) He testified that to use Ares, an individual must download the software from the internet. (*Id.* at 9.)

> If you would download the program from the Internet and you're the user ... you would be able to download, for example, if you searched, say, a specific movie, it would give you a list of what—which computers have that movie. And then you could physically download that same movie from ten different users....

(*Id.*) Schnaider further testified that a user must double-click the file with a mouse cursor to begin the download process. (*Id.* at 26.)

Schnaider testified that the file exchange happens over the internet and that it does not require a special type of connection; the only requirements for one user to download from another user's share-folder are (1) both users must have an internet connection, and (2) the program must be actively running. (*Id.* at 8–9.) He further testified that a user does not have "to make a conscious step for the files that he downloads to be shared," but rather that "[t]he default setting automatically lets you share." (*Id.* at 23.) He also testified that while using the Ares program a user cannot stop sharing files: "All you can do is change the wavelength of how hard it is for someone to share a file with you. It just makes it more difficult for someone to download from you." (*Id.* at 19.) "You cannot turn it fully off." (*Id.* at 23.)

Schnaider testified that he used a law enforcement version of Ares.[5] (*Id.* at 7.) The Court asked how Schnaider accessed Defendant's computer and how he determined what was in Defendant's shared folder. (*Id.* at 10.)

> THE WITNESS: ... The program is designed so that my search criteria for the specific law enforcement version is looking for files in the share folder of—that are specifically to child pornography via a S–H–A value, secured hash algorithm. It's a 32 digit number that is specifically to a file. It's like a fingerprint for that specific file.
>
> So my computer's looking for those specific sha values because those are known files of child pornography. Once it finds that file, it then—this is all happening behind the scenes—asks to connect to that computer to download it because when you sign up for Ares, there's a licensing agreement that you have to agree on before you can actually use the platform. Within that license

---

5. Schnaider testified that although he uses a law enforcement version, "it's as if [he] was any other user of the Ares program," except that "nobody can actually download from [him]." (*Id.*)

agreement it tells you how this program works and that anything in your share folder is accessible to anybody who's using the same program. They specifically say within that verbiage, don't leave your Social Security number in there, don't leave medical history, don't leave any personal information in there. It also speaks specifically to pornography and child pornography, that anything on that share folder is accessible to anybody in the world who's using that same Ares program.

. . .

MR. KOBRINSKI [Assistant United States Attorney]: . . . I believe the judge was also interested specifically in files that were—that you were aware of were in that shared folder. So if you could continue on that.

A. Okay. So I downloaded 31 files that are indicative of child pornography either by their title names or actually I actually viewed the images, the files, and I determined that this was child pornography. In addition, we looked at his Ares history, the forensic report of his laptop, and within that history of the subject, it appears that from that history that there are approximately 400 downloads of child pornography. When I say indicative of child pornography, the sha values matched the files that are known as child pornography and even the titles are very specific, only to indicate that they're—that the material subject is child pornography.

THE COURT: When you say he, who do you mean?

THE WITNESS: The user of the computer, Mr. Sanchez.

(*Id.* at 10–12.) Schnaider went on to testify that all 31 files were downloaded from the specific IP address associated with Defendant's laptop computer over a Comcast internet connection. (*Id.* at 13.)

Schnaider explained that once a user opens the Ares program his files are available for others to download. (*Id.* at 14–15.) He testified that Defendant confessed that he would open the program and leave it running. (*Id.* at 14.)

Q. . . . .Did law enforcement do anything different than a typical peer-to-peer user would do in accessing [Defendant's] files?

A. No.

Q. Did they make his files available in a way they otherwise wouldn't have been available?

A. No.

Q. So when you did the downloads, could other Ares users have also been downloading these files?

A. Oh; yes.

(*Id.* at 15.) Schnaider then described some of the child pornography he downloaded from Defendant's shared folder. (*See id.*)

Based on Schnaider's investigation, a search warrant was issued and executed on January 29, 2015. (*Id.* at 15–16.) Schnaider spoke to Defendant, first in English and then in Spanish because Defendant "was more comfortable speaking in Spanish." (*Id.* at 18.) Defendant denied knowing that the files were being shared on Ares. (*Id.*) He further stated that the last time he downloaded child pornography was two weeks before the January 29, 2015 search. (*Id.*) However, Schnaider knew that was false because he was able to determine that Defendant downloaded several files of child pornography "about three to four hours before [Schnaider] actually served the search warrant, the same day." (*Id.*) The majority of the child pornography files that Defendant downloaded were described in English on Ares. (*Id.* at 19.)

The Court ultimately concluded that Defendant was not entitled to the two-level reduction. (*Id.* at 41.) Relying on *United States v. Ray*, 704 F.3d 1307, 1313 (10th Cir.2013), the Court first found that the provisions of Section 2G2.2(b)(1) are conjunctive—that is, to be eligible for the reduction (1) the defendant's conduct must be limited to the receipt or solicitation of child pornography *and* (2) the defendant must not have intended to traffic in, or distribute, such material. (*Id.* at 34.) The Court then found that because it had previously ruled that the two-level enhancement for distribution applied pursuant to *Creel*, Defendant's conduct was not limited to the receipt or solicitation of child pornography. (*Id.* at 38.) Accordingly, he was not entitled to the two-level reduction under 2G2.2(b)(1). (*Id.* at 41.)

The Court adopts its June 29 oral ruling, as supplemented and modified below.

## II. Legal Standard

■ "The proponent of the downward adjustment—here the defendant—always bears the burden of proving a mitigating role in the offense by a preponderance of the evidence." *United States v. Rodriguez De Varon*, 175 F.3d 930, 939 (11th Cir. 1999) (en banc) (citations omitted).[6] "It falls to the district court then to evaluate the evidence presented and determine whether this burden has been satisfied." (*Id.*)

## III. Discussion

The sentencing guidelines for child pornography provide for a two-level decrease if: (A) the base offense level is 22; "(B) the defendant's conduct was limited to the receipt or solicitation of material involving the sexual exploitation of a minor; and (C) the defendant did not intend to traffic in, or distribute, such material[.]" U.S.S.G. § 2G2.2(b)(1). Defendant argues that he is entitled to this reduction because he did not know that his files could be shared and "had no intention of distributing any materials nor did he plea to distributing these materials." (Objections, D.E. 20 ¶ 6.)

The Eleventh Circuit has apparently not addressed the precise issue before this Court—i.e., whether a defendant who was adjudicated guilty only of *receiving* child pornography and who receives the two-level enhancement for distribution under U.S.S.G. § 2G2.2(b)(3)(F) may still be eligible for the two-level reduction in U.S.S.G. § 2G2.2(b)(1).[7] However, the Fifth and Tenth Circuits have recently addressed claims nearly identical to those alleged by Defendant. *See United States v. Baker*, 742 F.3d 618, 619–20, 624 (5th Cir.2014); *Ray*, 704 F.3d at 1310, 1313–14.

---

6. In the Court's June 29, 2015 oral ruling, it stated that "the Defendant has the burden to prove by a preponderance of the evidence based on reliable and specific evidence that he should receive the reduction." (Transcript (6/29/15) at 32.) This may be a misstatement of the applicable standard, which does not explicitly require a preponderance of "reliable and specific" evidence. *See De Varon*, 175 F.3d at 939. Thus, the Court modifies its June 29 oral ruling by striking "reliable and specific" from Defendant's burden of proving by a preponderance of the evidence that he is eligible for the two-level reduction under 2G2.2(b)(1).

7. The defendant in *United States v. Cubero* "pled guilty to *knowingly* distributing child pornography," 754 F.3d 888, 895 (11th Cir. 2014) (emphasis added), and admitted that "he placed some of his child pornography files in a 'shared' folder on his computer that enabled other people to access the files[,]" *id.* at 891. Thus, the Eleventh Circuit found that "[t]hese facts preclude Cubero's argument that he meets either relevant element of U.S.S.G. § 2G2.2(b)(1)." *Id.* at 895 (citing U.S.S.G. § 2G2.2 cmt. n. 1 ("[D]istribution includes posting material involving the sexual exploitation of a minor on a website for public viewing....")).

In *Baker*, the defendant installed the peer-to-peer file-sharing program "Frostwire" on his computer and used it to download child pornography. 742 F.3d at 619. Using Frostwire, an Immigration and Customs Enforcement ("ICE") agent was able to download files from the defendant's computer. *Id.* The defendant subsequently pled guilty to receiving child pornography. *Id.* The Government sought the two-level increase under U.S.S.G. § 2G2.2(b)(3)(F) because the defendant used the program "to seek out child pornography, maintained the child pornography in a shared directory, did not attempt to disable Frostwire's default sharing function, and was not surprised that the ICE agent was able to download child pornography from his computer." *Id.* The defendant argued that the increase did not apply "as he did not know that others could download files from his computer under Frostwire's 'default settings.'" *Id.* He further argued that he was entitled to the two-level reduction under Section 2G2.2(b)(1) because his conduct was limited to the receipt of child pornography. *Id.* Over the defendant's objection, the district court imposed the two-level increase and denied the two-level reduction. *See id.* at 619–20. On appeal, the defendant argued that the district court erred in both regards. *See id.*

The Fifth Circuit affirmed the sentence. *See id.* at 624. First, it held that Section 2G2.2(b)(3)(F) does not contain a scienter requirement and, therefore, the district court did not err in applying the two-level increase for distribution, "even absent evidence of [the defendant's] knowledge." *Id.* at 623. Furthermore, and relevant to the issue presently before the Court, the Fifth Circuit held:

> As the district court did not err when it increased Baker's offense level by two levels pursuant to § 2G2.2(b)(3)(F), it likewise did not err when it failed to decrease Baker's offense level by two levels under § 2G2.2(b)(1). Section 2G2.2(b)(1) applies only when the "the defendant's conduct was limited to the receipt or solicitation of material involving the sexual exploitation of a minor." Bakers conduct was not limited to the receipt of child pornography but involved distribution. As a result, § 2G2.2(b)(1) is inapplicable.

*Id.* at 623–24. Thus, under *Baker*, if a defendant receives the two-level enhancement for distribution under Section 2G2.2(b)(3)(F), he is ineligible for the two-level reduction under Section 2G2.2(b)(1). *See id.*

Similarly, in *Ray*, the defendant used the peer-to-peer file-sharing program "Shareaza" to search for and download child pornography. 704 F.3d at 1309. He "admitted that he was familiar with how to use computers and the Internet but said he was not a 'computer genius.'" *Id.* The Government's forensic investigation revealed that child pornography had been accessed four days prior to ICE's search of the defendant's home, and that the "share" setting of the Shareaza program was activated. *Id.* The defendant was charged with both distributing and receiving child pornography, but pled guilty only to receipt. *Id.* However, the PSR concluded that the two-level enhancement for distribution under Section 2G2.2(b)(3)(F) applied. *Id.* at 1310. The defendant objected, arguing that "the government had offered no evidence that [he] had distributed any child pornography or that any of the files downloaded through Shareaza had later been shared with another computer." *Id.* He further argued "that even if such sharing had occurred, such sharing had been unintentional." *Id.* Thus, the defendant argued that the two-level reduction under Section 2G2.2(b)(1) should apply "because his conduct 'was limited to

the receipt or solicitation' of child pornography and involved no intent to distribute." *Id.* (quoting U.S.S.G. § 2G2.2(b)(1)). Indeed, at sentencing, "[t]he government conceded that it could make no direct showing that the files on Defendant's computer had been shared with other computers, and it appeared to concede that it could not prove that the activation of the 'share' function on Defendant's version of Shareaza was the product of his volition rather than simply a default setting." *Id.* However, it urged that the use of a peer-to-peer file-sharing program constituted "generic distribution" that triggered the two-level enhancement. *Id.* Ultimately, the district court overruled the defendant's objections, finding that use of the file-sharing program was sufficient to support the two-level enhancement and deny the two-level reduction. *Id.*

██ The Tenth Circuit affirmed. *See id.* at 1317. First, it held that Section 2G2.2(b)(3)(F) required neither (1) *intent* to distribute nor (2) *knowledge* of the file-sharing program's distribution capability, *id.* at 1311–12, and therefore the district court correctly applied the two-level enhancement "despite the absence of evidence that Defendant knew that the file-sharing program he was using made his child-pornography files available to others on the Internet," *id.* at 1313. Second, it held that "the district court did not err in rejecting Defendant's request to apply the two-level reduction of § 2G2.2(b)(1)." *Id.*

That reduction applies to a defendant who, like Defendant, has a base offense level of 22 under § 2G2.2(a)(2) if "the defendant's conduct was limited to the receipt or solicitation of material involving the sexual exploitation of a minor ... *and* ... the defendant did not intend to traffic in, or distribute, such

material." *Id.* § 2G2.2(b)(1) (emphasis added). The requirements of this provision are conjunctive. Defendant's contention that he never had any intent to distribute, even if accurate, is therefore not controlling. *The district court's finding that Defendant had engaged in distribution—a finding we uphold—foreclosed any finding that Defendant's conduct was limited to receipt or solicitation.* Hence, Defendant was ineligible for the two-level reduction under § 2G2.2(b)(1).

*Id.* Thus, *Ray* stands for the proposition that eligibility for the two-level reduction under Section 2G2.2(b)(1) is precluded by the application of the two-level enhancement for distribution under Section 2G2.2(b)(3)(F). *See id.*

Here, at the June 22, 2015 sentencing hearing, the Court found that pursuant to the Eleventh Circuit's opinion in *Creel*, the two-level enhancement for distribution under Section 2G2.2(b)(3)(F) applied notwithstanding Defendant's argument that he "had no intention of distributing any materials" and did not "know that his files could be shared." [8] (Objections ¶ 5.) As a result of that finding, Defendant is ineligible for the two-level reduction under Section 2G2.2(b)(1). *Baker,* 742 F.3d at 623–24; *Ray,* 704 F.3d at 1313. *See also United States v. Abbring,* 788 F.3d 565, 567–68 (6th Cir.2015) (finding that the defendant, who used the Ares program to download child pornography, was ineligible for the two-level reduction under Section 2G2.2(b)(1) because even though he tried to prevent sharing files with other Ares users, law enforcement was still able to download child pornography from his shared folder while the defendant was downloading files).

---

8. Notably, in *Creel* the Eleventh Circuit relied on *Baker* and *Ray* to hold that Section

2G2.2(b)(3)(F) contains no *mens rea* requirement. 783 F.3d at 1360.

■ Even if applying the 2G2.2(b)(3)(F) enhancement did not automatically preclude application of the 2G2.2(b)(1) reduction, Defendant is still not entitled to the reduction because his conduct was not "limited to the receipt or solicitation of material involving the sexual exploitation of a minor[.]" U.S.S.G. § 2G2.2(b)(1)(B). As previously discussed, Application Note 1 under Section 2G2.2 defines "distribution" in relevant part as "any act … related to the transfer of material involving the sexual exploitation of a minor." U.S.S.G. § 2G2.2 cmt. n. 1. "The commentary further elaborates that posting illicit images on a publicly accessible website qualifies as distribution." *United States v. Spriggs*, 666 F.3d 1284, 1287 (11th Cir. 2012) (citing U.S.S.G. § 2G2.2 cmt. n. 1). In *Spriggs*, the Eleventh Circuit stated that "[a]llowing files to be accessed on the Internet by placing them in a file sharing folder is akin to posting material on a website for public viewing." *Id.* Distribution is complete when the user makes the files accessible to others. *See id.*[9]

Here, Defendant downloaded child pornography into a shared folder on the Ares network, making the files accessible to others. (*See* Transcript 6/29/15 at 7, 23.) Special Agent Schnaider testified that he downloaded 31 files of child pornography from Defendant's shared folder through the Ares network. (*Id.* at 11–13.) He further testified that other users also could have been downloading those files from Defendant's shared folder. (*Id.* at 15.)

This constitutes distribution under Section 2G2.2. *See Spriggs*, 666 F.3d at 1287; *Creel*, 783 F.3d at 1360. It is irrelevant whether Defendant knew or intended to share the files because distribution contains no *mens rea* element under Section 2G2.2. *Creel*, 783 F.3d at 1360. Because Defendant distributed child pornography by downloading it into a shared folder on his computer through the Ares network, which was then downloaded by Special Agent Schnaider and was accessible to others, his conduct was not "limited to the receipt or solicitation of material involving the sexual exploitation of a minor," U.S.S.G. § 2G2.2(b)(1)(B), and he is therefore not eligible for the two-level reduction.

The Court further finds that Defendant's act of going into the shared folders of other Ares users to download child pornography constitutes "distribution" under the definition in Application Note 1, precluding him from receiving the two-level reduction under Section 2G2.2(b)(1). Special Agent Schnaider testified that in order to download a video from Ares, a user types in search terms and the program returns a list of the computers currently running the program that contain a video matching the search terms. (Transcript (6/29/15) at 9, 20.) Then, the user is required to double-click on the file to begin the download process. (*Id.* at 26.) Schnaider further testified that the forensic report on Defendant's computer re-

---

9. In *Spriggs*, the Eleventh Circuit stated: "When the user *knowingly* makes the files accessible to others, the distribution is complete." 666 F.3d at 1287 (emphasis added). Later, in *Creel*, the Eleventh Circuit held that there is no *mens rea* element contained in the definition of "distribution" in Application Note 1. 783 F.3d at 1360. It therefore expressly retreated from *Spriggs* insofar as *Spriggs* required a defendant to *knowingly* make the files accessible to others in order to complete distribution: "Although we have stated in dicta that distribution occurs '[w]hen the user [of a file sharing program] knowingly makes the files [on his computer] accessible to others,' *Spriggs*, 666 F.3d at 1287, our dicta cannot be squared with the plain language of the commentary." *Id.* Thus, there is no requirement that a user of a file-sharing program must "knowingly" make files accessible to others to complete distribution. *See id.*

vealed that Defendant downloaded approximately 400 files of child pornography over the Ares network. (*Id.* at 11.) Indeed, Defendant admitted in the Stipulated Factual Statement that he downloaded child pornography over the Ares network. (D.E. 15 at 2.) The Court finds that each of these downloads constitutes an "act ... related to the transfer of material involving the sexual exploitation of a minor," U.S.S.G. § 2G2.2 cmt. n. 1. Thus, even if Defendant had not distributed child pornography by making it available to other Ares users, Defendant is still ineligible for the two-level reduction by virtue of his own downloading.

For these reasons, the Court finds that Defendant failed to prove by a preponderance of the evidence that he was eligible for the reduction. Indeed, the only evidence to which Defendant cites in support of the reduction is his own statement to law enforcement the day of the search that he did not know he was sharing the files he downloaded through Ares. (Objections ¶ 6.) However, during the same interview, Defendant told Special Agent Schnaider that the last time he downloaded child pornography was two weeks prior to the search, although Schnaider knew that Defendant had downloaded several files of child pornography "about three to four hours before [Schnaider] actually served the search warrant, the same day." (Transcript (6/29/15) at 18.) Also during the same interview, Defendant claimed that his laptop broke a week before the search; however, "[w]hen asked about the water trail, he stated that he would now tell law enforcement the truth, and that he just tried to break it and then wet it because he thought he could be in trouble for watching adult pornography." (PSR ¶ 15.) Thus, the Court finds that Defendant's statement that he did not know he was sharing his files through Ares is not credible.

On the other hand, Special Agent Schnaider—who the Court *does* find to be credible—testified that Ares requires users to submit to a licensing agreement. (*Id.* at 11.)

> Within that license agreement it tells you how this program works and that anything in your share folder is accessible to anybody who's using the same program.... *It also speaks specifically to pornography and child pornography, that anything on that share folder is accessible to anybody in the world who's using that same Ares program.*

(*Id.* at 11 (emphasis added).) Although Defense Counsel objected that there was no evidence that Defendant read the agreement or even could read it in English, there is sufficient evidence that Defendant knew some English. For example, when law enforcement spoke with Defendant during the execution of the search warrant, the conversation began in English but switched to Spanish after Defendant stated he was more comfortable speaking in Spanish. (*Id.* at 17–18.) Furthermore, Schnaider testified that in order to locate a file to download, an Ares user is required to type "search terms," and that the majority of the child pornography filenames found on Defendant's computer were in English. (*Id.* at 19.) In other words, Defendant was searching for child pornography in English. (*See id.*) For example, Defendant would search for "PTHC"—which stands for "pre-teen hard core"—in conjunction with several different words, like "Venezuela." (*Id.* at 18.)

Finally, even if Defendant did not read the licensing agreement, the evidence nevertheless gives rise to a reasonable inference that Defendant knew he was sharing his files. Defendant admitted that he had been downloading and viewing child por-

nography using the Ares network "for the past three to four years[.]" (PSR ¶ 15.) Defendant would have learned in the course of these three or four years that his child pornography files were being shared with other Ares users. *See Abbring*, 788 F.3d at 567 ("The use of a file-sharing program like Ares readily 'relate[s] to the transfer' of files, U.S.S.G. § 2G2.2 cmt. n. 1, because *the whole point of a file-sharing program is to share*, sharing creates a transfer, and transferring equals distribution.") (emphasis added) (citation omitted). Schnaider testified that to download a video on Ares, a user types in search terms and the program returns a list of the computers currently running the program that have a video matching the search terms. (Transcript (6/29/15) at 9, 20.) Then, the user is required to double-click on the file to begin the download process. (*Id.* at 26.) Having regularly used the Ares program to download child pornography for three to four years, Defendant surely would have realized that just as he was downloading files from other users' computers, they were downloading files from his computer. *See Spriggs*, 666 F.3d at 1287. In any event, the Court finds that Defendant has not established by a preponderance of the evidence that he was eligible for the two-level reduction under Section 2G2.2(b)(1).

## IV. Conclusion

In sum, the Court finds that the provisions of U.S.S.G. § 2G2.2(b)(1) are conjunctive—that is, to be eligible for the reduction (1) the defendant's conduct must be limited to the receipt or solicitation of material involving the sexual exploitation of a minor *and* (2) the defendant must not have intended to traffic in, or distribute, such material. *See Ray*, 704 F.3d at 1313. Because the Court previously found that the offense involved "distribution" as that term is defined in Application Note 1 and,

consequently, that the two-level enhancement applied under Section 2G2.2(b)(3)(F), *see Creel*, 783 F.3d at 1360, Defendant's conduct was not "limited to the receipt or solicitation of" child pornography. *See Baker*, 742 F.3d at 623–24; *Ray*, 704 F.3d at 1313–14. Therefore, Defendant is not eligible for the two-level reduction under Section 2G2.2(b)(1).

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Objection that he should receive the two-level reduction under United States Sentencing Guideline § 2G2.2(b)(1), filed May 28, 2015, is **OVERRULED.**