[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-15210
Non-Argument Calendar
_____

D.C. Docket No. 3:15-cr-00026-MCR-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee

versus

PAUL R. BLOOM,

Defendant-Appellant

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(October 5, 2016)

Before HULL, MARCUS, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Paul Bloom received a total sentence of 360 months of imprisonment, the statutory maximum, after pleading guilty to both producing and receiving child pornography. He challenges the reasonableness of his sentence on appeal. He argues that the district court abused its discretion in two main ways: (1) by basing his sentence on an unsupported factual finding; and (2) by relying on an improper factor in arriving at a sentence greater than necessary to accomplish the goals of sentencing. After careful review, we affirm Bloom's sentence.

**I.**

Bloom came to the attention of law enforcement after officers, using a peer-to-peer file-sharing network, downloaded several videos depicting child pornography from an IP address associated with Bloom's residence. In a subsequent search of Bloom's home pursuant to a warrant, law enforcement seized electronic devices containing over 850 videos and 2,000 images of child pornography downloaded over a three-year period. Law enforcement also discovered that Bloom had produced child pornography several months earlier using a nine-year-old girl he had been babysitting.

Under a written plea agreement, Bloom pled guilty to one count of knowingly and intentionally producing child pornography, in violation of 18 U.S.C. § 2251(a), (e) ("Count One"), and one count of knowingly receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2), (b)(1) ("Count Two").

Counts One and Two each had applicable statutory minimum and maximum sentences:  the range for Count One was 15 to 30 years of imprisonment; and the range for Count Two was 5 to 20 years of imprisonment.

Before sentencing, a probation officer prepared a presentence investigation report ("PSR"), which determined a combined guideline range of 262 to 327 months of imprisonment based on a total offense level of 39 and a criminal history category of I.  No objections were filed.  The district court adopted the PSR and its guideline range at sentencing.

The majority of the sentencing hearing concerned the parties' arguments for an appropriate sentence.  The government argued for a guideline-range sentence, while Bloom contended that a sentence at or near the statutory minimum on Count One (180 months) was sufficient.

In support of its request for a guideline sentence, the government presented two pieces of evidence.  First, the government introduced a disc containing files retrieved from Bloom's electronic devices, which included a video Bloom produced using the nine-year-old victim.  The government played a portion of this video at sentencing.  According to the PSR and the parties' comments at sentencing, the video depicts Bloom pulling down the underwear of the victim, exposing her vagina and anus, and then sexually manipulating her vagina and anus with his hand.  Second, the government introduced a sex doll of child-like

proportions that was seized from Bloom's home.  The doll had a used condom attached to it.

Bloom requested a sentence well below the guideline range, arguing that the child-pornography guideline was too harsh and that there were various mitigating factors about his conduct.  He asserted that his touching of the victim was an isolated incident, that he never communicated with others about child pornography, and that he did not distribute the child pornography he produced and even attempted to make his files inaccessible to others on the peer-to-peer network. Bloom also asked the court to take into account that, in his view, the victim was asleep during the sexual assault, so the psychological impact on the victim was likely to be minimal.

As Bloom's counsel stressed the isolated nature of the sexual assault, the district court interjected that the same sexual act, had it occurred on federal property or had Bloom crossed state lines, would have subjected Bloom to a mandatory sentence of no less than 30 years in prison under 18 U.S.C. § 2241(c). Moreover, after watching a portion of the video, the district court found it implausible that the victim had "slept through that."  In any case, the court explained, "the conduct occurred" whether the victim was asleep or not.  Bloom responded that the court should take into account the potential impact on the victim in comparing the severity of Bloom's conduct to other child-pornography crimes.

The district court also noted that it was particularly troubled by Bloom's cartoons depicting child pornography. For example, one cartoon included text representing that a child engaged in sexual acts with her father because "she didn't want to disobey [him], she didn't want to get spanked." These cartoons, according to the court, suggested more than an interest in possessing child pornography for his own use, because they "normalize[] child abuse in almost in a teaching fashion, describe[] to children that this type of behavior is okay. That suggests to me that this probably wasn't a first-time incident." Bloom responded that there was no evidence he had ever used the cartoons to "groom" a minor. The court replied, "But what other use? What other use? I mean, what other use?" The judge further elaborated, "he's got plenty of the real thing. He's got, like I said, more—he's got a lifetime, in my opinion, of child pornography, real images. He doesn't need cartoons for his own sexual gratification."

After hearing personally from Bloom, who expressed remorse and shame for his conduct, the district court pronounced sentence. The court first discussed the nature and circumstances of the offenses, including the "unspeakable" acts depicted in the files Bloom downloaded, which the court stated were "some of the worst" and "most disturbing" it had seen described in a PSR, the "extreme number of images" Bloom possessed, the three-year period of time Bloom had been downloading child pornography, and the fact that Bloom had produced child

5

pornography in which he sexually assaulted a child in his care. The court expressly rejected Bloom's assertion that the victim was asleep during the molestation, finding that she would likely have to live with the fear and degradation caused by Bloom's abuse. All of these factors combined, the court stated, "require[d] a very severe sentence."

Next, the district court briefly discussed the need for the sentence to deter others from engaging in similar conduct and then turned to the need for the sentence to protect the public from the "extreme risk" Bloom posed to society. The court found that the cartoons Bloom possessed indicated that he viewed child sexual abuse as something normal and not harmful to children, a perception reinforced by his comments at sentencing. Specifically, in expressing remorse during allocution, Bloom stated that he was thankful no minor had been injured by his actions, which told the court that he was minimizing his own conduct and had "very poor insight" into what he had done. This, in turn, the court concluded, suggested "the need for a very serious and severe sentence." Finally, the court cited the child-sized sex doll, which Bloom used to satisfy himself sexually despite being in an apparent sexual relationship with his adult girlfriend, who was pregnant. Taken together, the court stated, nothing in the record mitigated the court's concern that Bloom's sexual attraction to children "will ever be something that [he] can get control over."

For these reasons and the need to protect the public "in particular," the district court imposed a total sentence of 360 months of imprisonment, representing a 33-month variance above the high end of the guideline range.[1] The sentence, the court explained, took into account "in a very measurable way the sexual act that was committed on the child." The court again noted that Bloom would have faced a mandatory term of no less than 30 years, had he engaged in the same conduct on federal property or crossed state lines.

Bloom objected to the above-guideline sentence and again addressed the matter of whether the victim was awake during the sexual assault. The district court responded that its finding that the victim was awake was based upon its "observation of the video and just common sense." Without that specific finding, however, the court stated that it would have imposed a sentence of 327 months, within the guideline range. Bloom now appeals.

## II.

We review the reasonableness of a sentence, including a sentence above the advisory guideline range, under a deferential abuse-of-discretion standard. *United States v. Irey*, 612 F.3d 1160, 1186, 1188–89 (11th Cir. 2010) (*en banc*). In reviewing a sentence for reasonableness, we first ensure that the sentencing court committed no significant procedural error, such as failing to calculate the guideline

---

[1] Bloom received a sentence of 240 months on Count Two, the statutory maximum for that offense, to run concurrently with the 360-month sentence on Count One.

7

range, failing to consider the 18 U.S.C. § 3553(a) sentencing factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the guideline range. *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007). Next, we examine the substantive reasonableness of the sentence in light of the totality of the circumstances. *Id.*

Although Bloom expressly challenges the substantive reasonableness of his sentence only, his contention that the district court based its sentencing decision on an unsupported factual finding appears to fall within the rubric of procedural reasonableness—*i.e.*, a sentence based on clearly erroneous facts. Accordingly, we first review whether substantial evidence supports the court's factual finding that the child victim did not sleep through the sexual touching. Second, we address the substantive reasonableness of the sentence.

## A.

We review the district court's factual findings for clear error. *United States v. Creel*, 783 F.3d 1357, 1359 (11th Cir. 2015). For a factual finding to be clearly erroneous, we must be left with a definite and firm conviction that a mistake has been made based on the record as a whole. *Id.* We defer to the district court's factual findings because "the district court is in the best position to hear the evidence and draw reasonable inferences therefrom in making specific factual

8

findings." *United States v. Wilson*, 993 F.2d 214, 218 (11th Cir. 1993). "Where a fact pattern gives rise to two reasonable and different constructions, the factfinder's choice between them cannot be clearly erroneous." *United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir. 2012).

At a minimum, factual findings must be supported by "substantial evidence" in the record. *United States v. Ellisor*, 522 F.3d 1255, 1273 n.25 (11th Cir. 2008). That requires some external source supporting the district court's finding, such as factual admissions during a guilty plea, undisputed statements in the PSR, or evidence presented at trial or during the sentencing hearing. *See United States v. Martinez*, 584 F.3d 1022, 1027 (11th Cir. 2009); *United States v. Polar*, 369 F.3d 1248, 1255 (11th Cir. 2004). Factual findings "cannot be based on speculation," *United States v. Newman,* 614 F.3d 1232, 1238 (11th Cir. 2010), or on conclusory leaps in logic unsupported by the evidence, but the district court may draw reasonable inferences from the facts in the record, *Creel*, 783 F.3d at 1359. To draw such inferences, the court may rely on "common sense and ordinary human experience," *United States v. Philidor*, 717 F.3d 883, 885 (11th Cir. 2013), as well as the court's "day-to-day experience in criminal sentencing," *United States v. Melvin*, 187 F.3d 1316, 1322 (11th Cir. 1999).

Bloom asserts that the video fails to establish that the victim was awake, and that the district court's reference to "common sense" was simply unsupported

speculation.  However, the video upon which the court based its finding has not been included as part of the record on appeal.  As the appellant, the burden was on Bloom to ensure the record on appeal is complete, which means bringing before this court all parts of the proceedings below necessary for a determination of the validity of any claimed error.  *Pensacola Motor Sales Inc. v. E. Shore Toyota, LLC*, 684 F.3d 1211, 1224 (11th Cir. 2012); *see* Fed. R. App. P. 10(b)(2) ("If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a transcript of all evidence relevant to that finding or conclusion."); *Borden, Inc. v. Fla. E. Coast Ry. Co.*, 772 F.2d 750, 758 (11th Cir. 1985) (applying Rule 10(b)(2) to exhibits and depositions).  "[W]here a failure to discharge that burden prevents us from reviewing the district court's decision we ordinarily will affirm the judgment."  *Pensacola Motor Sales Inc.*, 684 F.3d at 1224 (quoting *Selman v. Cobb Cty. Sch. Dist.*, 449 F.3d 1320, 1333 (11th Cir. 2006)).  We find that to be the case here.  Without knowing exactly what the district court observed in the video, we cannot say whether the district court's inference was reasonable or not, and hence, whether the district court's factual finding was clearly erroneous.[2]

---

[2] Nevertheless, we note that the district court and the parties described substantial manipulation of the child's vagina and anus, suggesting that the district court's conclusion that no child could sleep through the actions was not clearly erroneous.

10

Accordingly, we must affirm the district court's factual finding and reject Bloom's construed challenge to the procedural reasonableness of his sentence.

**B.**

In sentencing a defendant, district courts must consider the sentencing factors listed in 18 U.S.C. § 3553(a) and "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing listed in § 3553(a)(2). 18 U.S.C. § 3553(a)(2). These purposes are retribution ("to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"), deterrence ("to afford adequate deterrence to criminal conduct"), incapacitation ("to protect the public from further crimes of the defendant"), and rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"). *See* 18 U.S.C. § 3553(a)(2). The district court also must consider, among other factors, the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guideline range, the pertinent policy statements of the Sentencing Commission, and the need to avoid unwanted sentencing disparities. 18 U.S.C. § 3553(a)(1), (3)–(7).

Generally, the weight given to any specific § 3553(a) factor is left to the sound discretion of the district court. *United States v. Clay*, 483 F.3d 739, 743

(11th Cir. 2007).  However, a district court can abuse its discretion by giving an improper or irrelevant factor substantial weight or by committing a clear error of judgment in balancing the proper factors.  *Irey*, 612 F.3d at 1189.

Where a district court imposes an upward variance based upon the § 3553(a) factors, it should explain why the variance is appropriate, and "the justification for the variance must be sufficiently compelling to support the degree of the variance." *Id.* at 1187 (internal quotation marks omitted).  Although we consider the extent of the deviation, we must give appropriate deference to the district court's decision that the § 3553(a) factors justify the variance.  *Id.*  The party challenging the sentence bears the burden of showing that it is unreasonable in light of the record and the 18 U.S.C. § 3553(a) sentencing factors.  *United States v. Tome,* 611 F.3d 1371, 1378 (11th Cir. 2010).

Here, Bloom has not established that his total sentence is substantively unreasonable.  First, we are not persuaded that the district court's reference to the thirty-year statutory minimum sentence for aggravated sexual abuse, in violation of 18 U.S.C. § 2241(c), amounted to consideration of an improper or irrelevant factor. As an initial matter, the district court was entitled to consider as relevant conduct at sentencing the undisputed fact that Bloom engaged in a sexual act with a nine-year-old child in his care, even though that conduct was not an element of either offense of conviction.  *See* U.S.S.G. § 1B1.3.  Furthermore, the record reflects that

12

the district court raised the statutory minimum under § 2241(c) primarily in response to Bloom's argument that mitigation was warranted in light of the isolated nature of the incident.

As the district court correctly pointed out, Congress mandated a thirty-year sentence for a similar, single incident occurring within federal jurisdiction. *See* 18 U.S.C. §§ 2241(c), 2246(2)(D). The only thing that separated Bloom from a defendant convicted of violating § 2241(c), the court explained, was a "jurisdictional hook," not the seriousness of the underlying factual conduct. So even if Bloom abused a single child, that was hardly a basis for mitigation. Whether these considerations fall under the nature and circumstances of the offense, § 3553(a)(1), or the need to avoid unwarranted sentencing disparities between defendants who engaged in similar conduct, § 3553(a)(6), we see no error in the district court's reasoning, and we conclude that the district court did not abuse its discretion by giving an improper or irrelevant factor substantial weight.

Moreover, the district court's sentencing decision was based on a number of other factors, many of which appear much more significant to the court's calculus. The record reflects that the court thoroughly considered the § 3553(a) factors and found that many supported the need for a very severe sentence. With regard to the nature and characteristics of the offense, the court cited the "unspeakable acts" depicted in the videos, the "extreme" number of videos and images Bloom

possessed (850 videos and 2,000 images), the length of time he had been downloading child pornography (over three years), and the fact that he abused a child who was in his care in order to produce child pornography.   Also of particular importance to the court was the need to protect the public, based on Bloom's cartoons that depicted child sexual abuse as normal and were of the type often used in child-sexual-abuse cases to "groom" children for sexual abuse, Bloom's comments at sentencings, and the child-sized sex doll.   Bloom has put forth no argument challenging the district court's balancing of these factors as unreasonable.

We have said before, and we say again, that "[c]hild sex crimes are among the most egregious and despicable of societal and criminal offenses."   *United States v. Sarras*, 575 F.3d 1191, 1220 (11th Cir. 2009).   We "have upheld lengthy sentences in these cases as substantively reasonable."   *Id.* (affirming as reasonable a 100-year sentence for a first-time offender who sexually abused a single thirteen-year-old girl and took photos of it); *United States v. Johnson*, 451 F.3d 1239, 1244 (11th Cir. 2006) (affirming as reasonable a 140-year sentence for an offender with few prior offenses who produced, possessed, and distributed child pornography); *see also Irey*, 612 F.3d at 1206-08 (describing the "devastating and long-lasting effects" childhood sexual abuse has on its victims).   Bloom's victims included not just the child he sexually assaulted but also the victims depicted in the child

14

pornography he possessed and distributed. *See Irey*, 612 F.3d at 1208 ("Every instance of viewing images of child pornography represents a renewed violation of the privacy of the victims and a repetition of their abuse." (quoting Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109–248, § 501(2)(D), 120 Stat. 587, 624 (2006) (codified at 18 U.S.C. § 2251 note))).

In sum, Bloom has not shown that his total sentence of 360 months of imprisonment, representing a 33-month variance above the high end of his guideline range of 262 to 327 months, was substantively reasonable under the totality of the circumstances. Accordingly, we affirm Bloom's total sentence.

**AFFIRMED.**

15