[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-15170
_____

D.C. Docket No. 1:15-cr-20019-JAL-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

RALPH ALPIZAR,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 26, 2018)

Before WILLIAM PRYOR and JILL PRYOR, Circuit Judges, and RESTANI,[*] Judge.

_____

[*] Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

PER CURIAM:

Ralph Alpizar was convicted of three counts of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1), and three counts of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4) and (b)(2), after law enforcement officers discovered that he was downloading and sharing child pornography files over the internet.  The district court sentenced Alpizar to the statutory maximum for each count, to be served consecutively, resulting in a total sentence of 1,440 months' imprisonment.  On appeal, Alpizar argues that his sentence is procedurally and substantively unreasonable.  After careful review, and with the benefit of oral argument, we affirm.

## I.    BACKGROUND

### A.    Factual Background

In March 2014, a Special Agent with the Federal Bureau of Investigation ("FBI") discovered that an IP address was sharing child pornography through a peer-to-peer file sharing program called ARES.[1]  The IP address was registered to Alpizar at an address in Miami.  After surveilling and researching the address, the agent determined that Alpizar lived there with his father, Rafael Alpizar.

---

[1] ARES users can share files with other users by placing files in a shared folder within their own ARES account.

Law enforcement officers executed a search warrant at Alpizar's home shortly before 6:30 in the morning on July 23, 2014. Alpizar's father answered the door after the officers knocked and announced themselves continually for five minutes. He told the officers that Alpizar was inside the house in his bedroom. The officers proceeded inside the house and began to shout for Alpizar. Two to three minutes later, Alpizar emerged from a bedroom. The officers searched the bedroom, which contained a computer with two monitors. The search of the room revealed emails addressed to Alpizar and diplomas—including one from the Dade County School Board indicating that Alpizar had met the requirements set by the office of vocational adult, career, and community education for a certificate in electronics technology—in his name. The ARES program was running on the computer, and the computer's "recycle bin" was open and had been emptied. The officers also found two hard drives in a spare bedroom. One of those hard drives was labeled "R" and "my pics." Doc. 155 at 121.[2]

Although Alpizar was told that he was not under arrest, he agreed to go to the police station to make a statement. Initially he denied knowing what a file sharing program was, but he later admitted that he used file sharing programs to download music. Alpizar also admitted that the hard drives found in the spare bedroom were his. Eventually, he initialed a formal statement acknowledging that

[2] Citations to "Doc #" refer to the numbered entries on the district court docket.

3

"images of child pornography were on his computer, [a] personally built black PC in his room under his desk which, in fact, he downloaded over the last couple of years from ARES."  Doc. 154 at 104.  The statement went on to say that "Ralph takes full responsibility and assures that this will never happen again, downloading [child pornography]."  *Id.*

A forensic team examined the computer from Alpizar's room.  It contained only one specially created user account, named "Ralph."  The ARES account on the computer was registered to Ralph Alpizar under the email address ralphrestoration@comcast.net.  The search history in the ARES program running on the computer revealed that someone had searched for multiple child pornography terms.  The FBI also found thousands of videos and images on the computer, including many with file names indicative of child pornography.

The FBI's forensic search of the computer revealed that on the morning of the search, items had been placed in the computer's recycle bin and then deleted; some of those items had been in the shared folder before deletion.  At least one file had been deleted at 6:28 a.m., after law enforcement began knocking on the door but before Alpizar left the bedroom.

The forensic team also examined the hard drives found in the spare bedroom, both of which contained child pornography.  The files had been

downloaded onto the hard drives and placed in a folder that had been manually created.  On one of the hard drives, the user account was identified as "Ralph."

Despite this evidence, Alpizar was not arrested after the first search.  Several months later, a new FBI Special Agent assigned to Alpizar's case reviewed the evidence and decided to obtain an arrest warrant for Alpizar.  Before doing so, the agent decided to check to see if Alpizar still was sharing child pornography over the internet.  The agent detected that Alpizar's IP address again was sharing child pornography.  Law enforcement executed a second search warrant in January 2015.

During the second search, Alpizar told law enforcement that he was the only one in the house who used the internet and that his father did not use the computers.  He admitted that he had purchased a new hard drive for his desktop after the FBI had seized the old one and that he had installed ARES on it.

Law enforcement conducted a forensic examination of the new hard drive, named "Ralph-PC."  Doc. 148 at 15.  Fax cover sheets with Alpizar's name on them and emails to "Ralph Restoration" were found on the computer. DriveScrubber, a program that wipes the hard drive clean to make deleted data unrecoverable, had been installed on the computer.  In addition, a user had disabled the computer's ability to create shadow copies of files that had been deleted. ARES had been downloaded; once again the registered user was Ralph Alpizar and

5

the associated email was ralphrestoration@comcast.net.  Numerous search terms associated with child pornography had been entered into ARES.

In total, counting only the files with titles strongly indicative of child pornography, the FBI estimated that between December 2010 and January 2015 Alpizar had downloaded 1,781 child pornography videos and images using ARES. Alpizar was arrested.

## B.    Procedural Background

In February 2015, Alpizar was charged via superseding indictment with three counts of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1), and three counts of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4) and (b)(2).  Alpizar's trial was set to begin June 15, 2015.  On June 4, 2015, however, his attorney requested a continuance because Alpizar had checked himself into a hospital the month before to receive treatment for mental health issues.  Alpizar left the hospital the next day on June 5, 2015.

The district court ordered a competency hearing and reset the trial for August.  But on the day of the hearing, Alpizar's counsel moved for another continuance because Alpizar again had admitted himself into a hospital the week before.  The district court ordered Alpizar to surrender himself to the federal detention center for a psychological exam.  In September, the parties stipulated that Alpizar was competent to proceed, and the district court set a trial date for October.

On the day the trial was set to begin, however, Alpizar's attorney informed the district court that Alpizar had been hospitalized the day before. The attorney later told the court that Alpizar had lost his memory, and the court granted a motion for a competency hearing. In April 2016, at the competency hearing, Alpizar's attorney told the district court that she had had no communication from Alpizar and that when she spoke with him, he seemed not to recognize her or know the charges against him. The district court, nevertheless, found Alpizar competent to proceed to trial. The court based its decision on an expert report prepared by professionals at the Mental Health Unit of Federal Medical Center-Butner, which stated that Alpizar's "only diagnosis [was] malingering" and explained that "[h]is current presentation [was] the result of a volitional attempt to present as incompetent to stand trial." Doc. 147 at 6. Trial began later that month.

During the trial, the parties stipulated that child pornography had been downloaded onto the computers in Alpizar's room and also had been found on the two spare hard drives and on the black homemade computer in Alpizar's room that had been seized during the first search. The remaining issues at trial were whether Alpizar was the person who had been downloading and possessing child pornography and, if so, whether he had done so knowingly. The jury convicted Alpizar on all counts, and he proceeded to sentencing.

7

Alpizar's base offense level was 22 under United States Sentencing Guideline § 2G2.2(a)(2). His presentence investigation report ("PSI") recommended multiple enhancements, resulting in a total offense level of 43. As relevant to this appeal, Alpizar objected to the following enhancements: pattern of activity involving the sexual abuse or exploitation of a minor, under U.S.S.G. § 2G2.2(b)(5), for sexually abusing his former stepdaughter; obstruction of justice, under U.S.S.G. § 3C1.1, for attempting to delete child pornography files when the police arrived during the first search and for feigning mental illness, which delayed the trial and cost the government substantial resources; distribution of child pornography, under U.S.S.G. § 2G2.2(b)(3)(F), for sharing child pornography files through ARES; and use of a computer to receive and possess child pornography, under U.S.S.G. § 2G2.2(b)(6).

At Alpizar's sentencing hearing the government called N.J., Alpizar's former stepdaughter.[3] N.J. was 28 years old on the date of the hearing. She testified to the following: When she was nine years old, while Alpizar was married to her mother, he would come into her bedroom, give her back rubs, pull off her underwear, and penetrate her vagina with his fingers. N.J. did not remember how many times this happened, but she testified that it was at least a "handful of times." Doc. 151 at 19. She did not tell anyone about the incidents for several years.

---

[3] Although N.J. was not a minor when she testified, we use her initials to protect her privacy.

Then, when she was 14, she overheard her older sister telling their mother that Alpizar had touched the sister inappropriately.  N.J. and her sister reported the touching to the police, and Alpizar was arrested.  The charges against him later were dropped.  N.J. testified that her mother told her that the evidence had been insufficient or inconsistent.  N.J. and her sister moved in with their father, and N.J. attended counseling.  She testified that the abuse had affected her personal relationships and that she felt sorry for Alpizar.

The district court found N.J. very credible, explaining that her reaction was consistent with what would be expected of a nine year old child, she had attended counseling, and she had not tried to magnify the nature of the abuse or exaggerate the number of times it had happened.  The court concluded that through N.J.'s testimony the government had proven by a preponderance of the evidence that Alpizar had engaged in a pattern of activity involving the sexual abuse of a minor and overruled Alpizar's objection regarding that enhancement.

As for the obstruction of justice enhancement, the district court agreed with Alpizar that his attempts to delete child pornography from his computer did not warrant the enhancement.  The district court nonetheless found that the enhancement applied based on Alpizar's willful failure to appear for judicial proceedings and feigning mental illness to delay trial.

9

The district court also overruled Alpizar's objection to the distribution enhancement. The court found that Alpizar's knowledge of and sophistication with computers and his decision to leave ARES open and running so others could access his shared folder—especially after law enforcement had put him on notice during the first search and interview that through ARES he was sharing child pornography—supported a finding that Alpizar had knowingly distributed child pornography.[4]

Finally, the district court overruled Alpizar's objection that an enhancement for use of a computer and another for distribution constituted double counting. Circuit precedent made clear that the United States Sentencing Commission intended each of the enhancements in U.S.S.G. § 2G2.2 to apply cumulatively.

With a total offense level of 43 and a criminal history category of I, Alpizar's guidelines sentence was life in prison. His guidelines range was adjusted, however, to 1,440 months, the statutory maximum of 20 years for each of the six counts, running consecutively. *See* U.S.S.G. § 5G1.2(d) (explaining that when a defendant is convicted of multiple offenses and the maximum sentence for any single count is less than the defendant's guidelines range, the counts must run

---

[4] Although Alpizar was sentenced under the 2015 Sentencing Guidelines, which contained no mens rea element for U.S.S.G. § 2G2.2(b)(3)(F), s*ee United States v. Creel*, 783 F.3d 1357, 1359-60 (11th Cir. 2015), the district court expressly gave Alpizar the benefit of the 2016 Sentencing Guidelines, which amended the enhancement to require knowing distribution, *see* U.S.S.G. § 2G2.2(b)(3)(F); *United States v. Monetti*, 705 F. App'x 865, 868-69 (11th Cir. 2017) (unpublished) (recognizing 2016 amendment).

consecutively to increase the sentence until it equals the guidelines range); *see also United States v. Sarras*, 575 F.3d 1191, 1208-09 (11th Cir. 2009) (relying on U.S.S.G. § 5G1.2(d) to explain why the defendant's advisory guidelines range had been adjusted from life in prison to 1,200 months—the statutory maximum for each count running consecutively).

After calculating the advisory guidelines range, the district court discussed the nature and circumstances of Alpizar's offense and his history and characteristics. As to the nature of his offense, the district court emphasized that Alpizar had continued to view and share child pornography after being caught and promising to stop. The court also noted that Alpizar had obstructed justice by feigning mental illness to avoid trial. As to Alpizar's history and characteristics, the district judge acknowledged that Alpizar had served his country in a high-level, stressful position but remarked that Alpizar was the first defendant to appear before the judge for possession of child pornography who also had committed sexual abuse. The district court also commented that, with the exception of a brief "I'm sorry," Alpizar had expressed no remorse toward the victims, including N.J., instead focusing on why he thought he deserved leniency. The court, noting that it had considered all of the § 3553(a) factors, sentenced Alpizar to 1,440 months in prison—20 years for each count, to be served consecutively—which it noted was within the guidelines range. This is Alpizar's appeal.

11

## II.    STANDARDS OF REVIEW

We review the reasonableness of a sentence for an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007).  Reviewing the reasonableness of a sentence is a two-step process.  "We look first at whether the district court committed any significant procedural error and then at whether the sentence is substantively reasonable under the totality of the circumstances." *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).  The party challenging the sentence bears the burden of showing it is unreasonable in light of the record and relevant factors. *Id.*

"With respect to Sentencing Guidelines issues," we review "purely legal questions *de novo*, a district court's factual findings for clear error, and, in most cases, a district court's application of the guidelines to the facts with due deference." *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010) (internal quotation marks omitted).  A finding is not clearly erroneous unless we are "left with a definite and firm conviction that a mistake has been committed." *Id.* (internal quotation marks omitted).  The burden is on the government to "establish[] by a preponderance of the evidence the facts necessary to support a sentencing enhancement." *United States v. Kinard*, 472 F.3d 1294, 1298 (11th Cir. 2006).

12

### III.    ANALYSIS

On appeal, Alpizar argues that his sentence is procedurally and substantively unreasonable.[5]  For the reasons that follow, we affirm Alpizar's sentence.

### A.    Procedural Reasonableness

"A sentence may be procedurally unreasonable if the district court improperly calculates the Guidelines range, treats the Guidelines as mandatory rather than advisory, fails to consider the appropriate statutory factors, selects a sentence based on clearly erroneous facts, or fails to adequately explain the chosen sentence."  *United States v. Gonzalez*, 550 F.3d 1319, 1323 (11th Cir. 2008).  Here, Alpizar argues that his sentence is procedurally unreasonable because the district court erroneously applied four different sentencing enhancements—for obstruction of justice, distribution of child pornography, engaging in a pattern of activity involving the sexual abuse or exploitation of a minor, and the use of a computer. We address each enhancement in turn.

### 1.    Enhancement for Obstruction of Justice

Alpizar first argues that the district court erroneously applied a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1.  That provision states:

---

[5] Alpizar also argues that the evidence was insufficient to convict him of knowingly receiving and possessing child pornography and that the district court abused its discretion by admitting certain pieces of evidence during trial.  We affirm the district court on these issues, which warrant no further discussion.

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1.  The commentary to U.S.S.G. § 3C1.1 explains that "willfully failing to appear, as ordered, for a judicial proceeding" is one example of conduct covered under this enhancement.  *Id.* § 3C1.1 cmt. n.4(e).  This court has held that the obstruction of justice enhancement properly was applied where a defendant "feigned amnesia," which "postponed the trial for a year and forced the government to waste time and resources in evaluating his competency."  *United States v. Patti*, 337 F.3d 1317, 1325 (11th Cir. 2003).

The district court committed no clear error in finding that the government had proven by a preponderance of the evidence that Alpizar had feigned mental illness and wasted government time and resources, thus committing obstruction of justice.  In a pretrial proceeding, the district court reviewed an evaluation by professionals from the Mental Health Unit at the Federal Medical Center-Butner regarding Alpizar's competency.  The report explained that Alpizar's pretrial behavior—including pretending not to recognize his attorney or remember the charges against him—was "the result of a volitional attempt to present as incompetent to stand trial" and that "[h]is only diagnosis [was] malingering."  Doc. 147 at 6.  This report, along with Alpizar's decision to check himself into a

14

hospital on several occasions right before a hearing or trial—resulting in several continuances and delaying the trial by more than six months—sufficed to establish that Alpizar had committed obstruction of justice. The application of this enhancement was not erroneous.

### 2.    Enhancement for Distribution

Alpizar next argues that the district court erred in applying a two-level enhancement for knowing distribution of child pornography under U.S.S.G. § 2G2.2(b)(3)(F). Although he admits that he shared child pornography, he asserts that he did not *knowingly* share the files; rather, he argues, the files were auto-shared due to the nature of the ARES program.

The district court did not clearly err in finding that the government had proven by a preponderance of the evidence that Alpizar knowingly distributed child pornography. This court recently reversed a defendant's conviction for distribution of child pornography because the evidence was insufficient to prove beyond a reasonable doubt that the defendant had engaged in knowing distribution. *See generally United States v. Carroll*, 886 F.3d 1347 (11th Cir. 2018). In *Carroll*, the only evidence that the defendant knowingly had distributed child pornography was that he had placed the files in his ARES shared folder. *Id.* at 1353. The court explained that "the fact that files were automatically shared from [the defendant's] Ares folder, without some evidence of his awareness of it, cannot carry the

government's burden to prove knowing distribution beyond a reasonable doubt." *Id.* at 1353-54. Importantly, the court noted that "[n]othing in the record demonstrate[d] that [the defendant] . . . was even aware that the contents of his Ares folder were automatically distributed to the peer-to-peer network." *Id.* at 1353. Further, the court explained that "the government did not put forth evidence that [the defendant] had some advanced technological proficiency that might have rendered his ignorance to the file sharing process implausible." *Id.* at 1354 n.4.

Unlike the defendant in *Carroll*, Alpizar did in fact have advanced computer knowledge: he had a diploma from the Dade County School Board indicating that he had met the requirements for a certificate in electronics technology; he admitted that he had built his computer himself; a program had been installed on his computer to erase deleted files; and the computer's ability to create shadow copies of deleted files had been disabled to avoid detection. Alpizar also admitted to knowing how file sharing programs like ARES worked. Finally, Alpizar was on notice that he was sharing child pornography after the FBI came to his house, confiscated his computer and hard drives, and interviewed him. The officers discussed with Alpizar how ARES file sharing worked, and he promised not to do it again. Nevertheless, he continued to share child pornography through ARES after that date. This evidence was more than sufficient for the district court to find

that Alpizar knowingly distributed child pornography.  The application of the enhancement therefore was not erroneous.

### 3.    Enhancement for Pattern of Activity

Alpizar argues that the district court erred in applying a five-level enhancement for engaging in a pattern of activity involving the sexual abuse or exploitation of a minor under U.S.S.G. § 2G2.2(b)(5).  The Sentencing Guidelines define "[p]attern of activity involving the sexual abuse or exploitation of a minor" as follows:

> [A]ny combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (C) resulted in a conviction for such conduct.

U.S.S.G. § 2G2.2 cmt. n.1.  Further, "sexual abuse or exploitation" does not include "possession, . . . receipt, or trafficking in material relating to the sexual abuse or exploitation of a minor."  *Id.*

Alpizar argues that the district court erred in applying this enhancement because (1) his offense of conviction does not constitute "sexual abuse or exploitation," (2) there was no credible evidence that he had engaged in two or more instances of sexual abuse of a minor, and (3) the previous activity regarding his stepdaughter was too remote in time to be probative.  We reject these arguments.

17

As to his first argument, Alpizar is correct that neither possession nor receipt of child pornography qualifies as "sexual abuse or exploitation."  But his offense of conviction did not serve as the basis for the application of this enhancement. Instead, the district court applied the enhancement because Alpizar had, on two or more occasions, sexually abused his former stepdaughter.

As regards his second argument, the evidence was sufficient to establish that Alpizar had committed two or more separate instances of sexual abuse of a minor. N.J., Alpizar's former stepdaughter, testified that Alpizar penetrated her vagina with his fingers on at least a "handful" of occasions when she was nine years old. Doc. 151 at 19.  In finding that N.J. was very credible, the district court considered her age at the time of the incident, the fact that she had gone to counseling, and her demeanor and testimony.  We find no clear error in the district court's credibility determination and, consequently, its finding that the enhancement was justified because Alpizar had sexually abused N.J. on two or more occasions when she was a minor.[6]

As for Alpizar's third argument, that the conduct was too remote in time to be probative, this argument fails in light of our decision in *United States v. Turner*, 626 F.3d 566 (11th Cir. 2010).  In *Turner*, the defendant was convicted of receipt and possession of child pornography.  *Id.* at 568.  The district court applied the

---

[6] Although Alpizar argues that N.J.'s testimony about her sister's disclosure was hearsay, the enhancement is proper based only on Alpizar's conduct as to N.J. herself.

18

five-level enhancement for pattern of activity because the defendant had been convicted of sexually abusing a minor in 1990, 19 years prior. The victim provided a statement to the sentencing court, in which she said that from ages two to five, she had been sexually abused by the defendant "on numerous occasions." *Id.* at 569. The defendant admitted that he had sexually abused a child on two or more occasions, but he argued that the behavior was "too remote in time to constitute a 'pattern of activity.'" *Id.* at 572. The *Turner* court rejected that argument, explaining:

> Nothing in § 2G2.2(b)(5) or its commentary suggests that the "pattern of activity" must be temporally close to the offense of conviction. Under the plain terms of the commentary, the only requirements for establishing a "pattern of activity" are two or more instances of sexual abuse or exploitation of a minor that are separate from one another. Turner's repeated sexual abuse of a little girl over several years in the late 1980s more than satisfies those requirements.

*Id.* at 573. This court thus has specifically rejected Alpizar's argument that U.S.S.G. § 2G2.2(b)(5) has a temporal limitation.

In sum, the district court did not clearly err in finding N.J. credible and in finding that the government had proven by a preponderance of the evidence that she had been sexually abused by Alpizar on two or more occasions when she was a minor. The application of the enhancement for pattern of activity was not erroneous.

19

**4.      Enhancement for Use of a Computer**

Finally, Alpizar argues that the district court erred in applying a two-level enhancement for using a computer to receive and possess child pornography under U.S.S.G. § 2G2.2(b)(6).  He admits that he used a computer to access and possess child pornography, but he argues that the enhancement constitutes impermissible double counting because he also received an enhancement for distribution, which occurred through the ARES program and required the use of a computer.

"Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." *United States v. Cubero*, 754 F.3d 888, 894 (11th Cir. 2014) (internal quotation marks omitted).  "Moreover, [w]e presume that the Sentencing Commission intended separate guidelines sections to apply cumulatively, unless specifically directed otherwise." *Id.* (alteration in original) (internal quotation marks omitted).

This court has explained that U.S.S.G. § 2G2.2 addresses a "wide range of criminal conduct that occurs after child pornography has been produced." *Id.*  To capture this wide range of conduct, "guideline § 2G2.2 is structured so that the range of harms associated with child pornography distribution can be addressed through various offense level increases and decreases." *Id.* at 895.

20

This court has held in similar circumstances that the enhancement for use of a computer is not double counting. *See United States v. Little*, 864 F.3d 1283, 1291 (11th Cir. 2017). The *Little* court reasoned that use of a computer was not required for the offense of transportation of child pornography under the relevant statute; thus, "in a transportation case . . . where the child pornography was transported using a computer, application of a § 2G2.2(b)(6) enhancement for the use of a computer does not result in impermissible double counting." *Id.*

Following the *Little* court's reasoning, we conclude that Alpizar's enhancement for use of a computer is not duplicative of his enhancement for distribution. As relevant to § 2G2.2, the Sentencing Guidelines define "[d]istribution" as follows:

> [A]ny act, including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor. Accordingly, distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing but does not include the mere solicitation of such material by a defendant.

U.S.S.G. § 2G2.2 cmt. n.1. Like the statutory offense of transportation of child pornography examined in *Little*, "distribution" does not require the use of a computer because one can "possess[] with intent to distribute, produc[e], transmit[], advertise[], and transport[]" covered material through means other than a computer. *Id.* Accordingly, the enhancement for use of a computer does not

21

cover the same conduct as the enhancement for distribution, and the application of both enhancements is not impermissible double counting.

Whether an enhancement for using a computer to receive, possess, or distribute child pornography remains appropriate in the present day—when the computer also is the most pervasive and probable means of receipt, possession, and distribution—is a valid question. "Indeed," as the United States Sentencing Commission has noted, the computer enhancement originally was "promulgated when offenders typically received and distributed child pornography in printed form using the United States mail," and the enhancement was "intended to apply to only certain offenders who committed aggravated child pornography offenses" rather than operate as the "routine[]" enhancement it does today. United States Sentencing Comm'n, *Report to Congress: Federal Child Pornography Offenses* 313 (2012). But it is not up to the courts to rewrite the guideline, which was "promulgated pursuant to specific congressional directives or legislation." *Cubero*, 754 F.3d at 899 (emphasis and internal quotation marks omitted). The application of this enhancement was not erroneous.

## B.    Substantive Reasonableness

Because the district court committed no procedural error, we next consider the substantive reasonableness of Alpizar's sentence. Alpizar argues that his 1,440 month sentence for the receipt and possession of child pornography is

22

substantively unreasonable.  Although he concedes that with the enhancements applied the Sentencing Guidelines indicate that his sentence should be life in prison, he argues that the guidelines range "substantially over-states the appropriate punishment" for his conduct.  Appellant's Br. at 58.  We disagree.

Under 18 U.S.C. § 3553(a), the district court is required to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" of § 3553(a)(2)—the need to reflect the seriousness of the offense; promote respect for the law; provide just punishment; deter criminal conduct; protect the public from the defendant's future criminal conduct; and effectively provide the defendant with educational or vocational training, medical care, or other correctional treatment.  18 U.S.C. § 3553(a)(2).  The district court must also consider the nature and circumstances of the offense; the history and characteristics of the defendant; the kinds of sentences available; the applicable guidelines range; the pertinent policy statements of the Sentencing Commission; the need to avoid unwarranted sentencing disparities; and the need to provide restitution to victims. *Id.* § 3553(a)(1), (3)-(7).

In conducting our review, we consider the totality of the circumstances and whether the statutory factors in 18 U.S.C. § 3553(a) support the sentence in question.  *Gonzalez*, 550 F.3d at 1324.  Although we do not automatically presume

23

a within-guidelines sentence to be reasonable, ordinarily we expect it to be. *United States v. Asante*, 782 F.3d 639, 648 (11th Cir. 2015).

A district court abuses its discretion and imposes a substantively unreasonable sentence "only when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015) (internal quotation marks omitted). The weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court, *United States v. Langston*, 590 F.3d 1226, 1237 (11th Cir. 2009), and we may vacate a sentence "only if[] we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case," *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (internal quotation marks omitted).

Alpizar's 1,440 month sentence—which, although extraordinarily long, was within Alpizar's guidelines range—was substantively reasonable. The district court gave extensive attention to the sentence it imposed. The court expressly stated that it had considered all of the § 3553(a) factors, and it discussed, on the record, several of those factors, including the circumstances of the offense and

24

Alpizar's history and characteristics. For example, the district court considered that Alpizar had continued to download child pornography after he had been caught by law enforcement and promised to stop and also had obstructed justice by feigning mental illness and repeatedly delaying his trial. The district court acknowledged that Alpizar had served his country in a high-level, stressful position, but also emphasized that Alpizar was the first defendant the court had encountered who had sexually abused a minor in addition to possessing child pornography. Under these circumstances, we are not left with a "definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors." *Id.* (internal quotation marks omitted). We recognize that 1,440 months is an "incredibly strong sentence," doc. 151 at 92, but we cannot say the district court abused its discretion in imposing it. *See Gall*, 552 U.S. at 51 ("The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court."). Under our deferential standard of review, Alpizar's sentence is substantively reasonable.

## IV.    CONCLUSION

For the foregoing reasons, we affirm Alpizar's conviction and sentence.

**AFFIRMED.**

25